## WILLIAMS *v.* McKEE.

### (*Nashville.*　January 23, 1897.)

1. **LIBEL AND SLANDER.** *Special plea embraced in general issue.*

   A special plea in an action for slander is covered by the general issue, and should be stricken out as immaterial, which denies that the words and charges contained in the declaration are correct in form and substance, denies that the meaning attributed to the language is its legitimate construction, and denies that the words were spoken in a malicious sense, but avers that they were spoken in an innocent sense, with no intent to malign or defame. (*Post, pp. 141–143.*)

2. **SAME.** *Plea of justification.*

   A plea of justification in an action for libel is bad, where it does not admit that defendant spoke the alleged slanderous words, but states that "if" he did he was justified in doing so. (*Post, p. 143.*)

3. **SAME.** *Court construes the language, when.*

   The construction of language which is not ambiguous, and is slanderous *per se*, is for the Court instead of the jury. (*Post, pp. 143, 144.*)

   Case cited: Bank *v.* Bowdre, 92 Tenn., 723.

4. **SAME.** *Words slanderous per se.*

   A statement that a designated person has stolen corn from the speaker, and that he is a thief, and has been one from his cradle, is slanderous *per se.* (*Post, pp. 140, 141, 144.*)

5. **SAME.** *Same.*

   A statement that a designated person had been guilty of rape, and torn every rag of clothes off one of the nicest women in a specified county, is slanderous *per se.* (*Post, pp. 140, 141, 144.*)

6. **SAME.** *No defense that words were innocently used.*

   That one who used language which was slanderous *per se*, did so in an innocent way, and with no intent to malign or injure

the person of whom it was spoken, furnishes no legal excuse for making the statement. (*Post, pp. 144, 145.*)

7. EVIDENCE. *As to character.*

The Judge should not, before the testimony is introduced, fix a limit on the number of witnesses that he will permit to be examined on the question of the good or bad character of the parties, before such character is put in issue. (*Post, pp. 145–147.*)

---

FROM   WILSON.

---

Appeal in error from Circuit Court of Wilson County.   W. C. HOUSTON, J.

R. CANTRELL and McMILLIN & SMITH for Williams.

W. M. HAMMOCK, N. G. ROBERTSON, and H. F. STRATTON, for McKee.

BEARD, J.   This is an action for slander.   The declaration contains four counts.   The first count alleges that defendant spoke of the plaintiff "the following false and defamatory words:" "I told you not to have anything to do with W. B. Williams, but now you have got to stealing hogs together;" the second avers that the defendant falsely and maliciously spoke of plaintiff these words: "W. B. Williams is a thief, and has been one from his cradle up.   He has stolen corn from me to feed Jim Overall's horses on, and further said that the plaintiff had been guilty of rape, and had torn every

rag of clothes off of one of the nicest women in Wilson County;" the third alleges that defendant had said that plaintiff "is a thief, and always has been—he has stolen Jordan McKee's hogs, and has stolen from me;" while the fourth embraces and repeats the averments of the second and third counts.

To this declaration the defendant filed five pleas. The first was the plea of the general issue, the second was the same plea with a little variation in expression, and the third set up the statute of limitation of six months. The fourth plea is in these words: The defendant "denies that the words and charges imputed in the declaration are correct in form and substance," etc., "and that the meaning attributed to the language," etc., "is a legitimate construction of the same, and he denies that they were spoken in a malicious sense," etc., "but avers that they were spoken in an innocent sense, with no intent to malign or defame," etc. The fifth is what defendant calls, and the trial Judge treated, as a plea of justification, and is in these words: "The defendant, for plea, says that if he spoke the words of or concerning the plaintiff, as ascribed in the declaration, they are true, and he was justified in speaking them."

Upon the coming in of these pleas, the plaintiff moved the Court to strike out the second, fourth, and fifth. This motion was sustained as to the second, but overruled as to the fourth and fifth. Thereupon replications were filed, and the case was

subsequently tried by a jury, who returned a verdict in favor of the defendant. A motion for a new trial having been overruled, the case has been appealed to this Court by the plaintiff, who assigns a number of errors upon the action of the Court below. The more important of these will now be disposed of.

1. It is assigned for error that the trial Judge overruled plaintiff's motion to strike out the defendant's fourth plea. This assignment is well taken. The fourth plea has already been set out, and need not be repeated. Every defense set up in that plea could have been availed of by the defendant under the plea of the general issue. Mr. Newell, in his work on Defamation, Libel, and Slander, p. 648, says: "In an action for oral or written slander, the plea of the general issue operates as a denial of the extrinsic facts stated in the inducement, the speaking of the words, or publication of the libel, the truth of the colloquium, or the application of the words to the plaintiff and to the extrinsic facts alleged in the declaration, and the damage. . . . Where the defense is that the libel or words were published or spoken, not in the malicious sense imputed by the declaration, but in an innocent sense, or upon an occasion which warranted the publication, this matter may be given under the general issue." In fact, it may be said that under the plea of the general issue the defendant may, in this action, set up every defense short of justification, or that of

the statute of limitations.    3. Lawson on Rights and Remedies, Sec. 1306.    This fourth plea was immaterial, and should have been stricken out on this motion.

2. It is assigned for error that the trial Judge overruled the motion to strike out the fifth plea of defendant.    This assignment is also well taken. This, while so intended, was not a plea of justification.    In it the defendant does not admit that he spoke the defamatory words, but instead puts his plea in a hypothetical form—that is, "if he spoke the words," etc., then "they are true."    Chitty, in his work on Pleading, Vol. I., p. 496, announces the rule on this subject clearly and correctly, thus: "Consistently with the elementary principle of pleading, that pleas of justification or in avoidance must confess the fact to which they are applied, it is essential that a special plea justifying the publication of slanderous matter should admit the libel or words complained of."

3. Again, it is insisted that the trial Judge was in error in submitting to the jury for their construction the defamatory language complained of. This insistence is sound.    The rule is, where the defamatory matter is plainly unambiguous, the question of its meaning and character is for the Court; but where its meaning is ambiguous, so that extrinsic evidence is needed to determine its character, as to its being actionable or not actionable, it is then a question for the jury, under proper instruc-

tion from the Court, to find its true character and significance." Newell on Defamation, Libel, and Slander, 290. *Bank* v. *Bowdre*, 92 Tenn., 723.

There was no ambiguity in the words set out in the several counts of the declaration in this case; they were clearly defamatory and actionable, *per se*, under all the authorities, and it was the duty of the trial Judge to have so said distinctly to the jury, and then he should have directed them that, in the event they found that the defendant uttered them of or concerning the plaintiff, that he was entitled to recover.

But there is another objection to the instructions of the trial Judge as directed to each one of the counts of the declaration, and that is, he rests the right of plaintiff to recover, in part, at least, upon the defendant's intent in the utterance of the defamatory words. This characterizes, with more or less emphasis, the whole body of his instructions, but it is especially noticeable when he comes to deal with the fourth count. He says to the jury that the words set out in this count are "actionable in themselves as slanderous words," and that if they found that they were spoken as alleged, etc., "the plaintiff would be entitled to recover," etc., but if they should find that in using them "the defendant did not intend to impute to plaintiff the commission of the crime," etc., "but that they were used in an innocent way, with no intent to malign or injure," etc., "then the defendant would not be liable." In

this the trial Judge fell into error, for where slanderous and defamatory words are published the want of intention to injure furnishes no legal excuse. So far as the maintenance of an action for the defamation is concerned, it is immaterial whether they were uttered seriously or in jest, designedly or inadvertently. If the defendant has spoken slanderous words, that have injured the plaintiff's reputation, he is liable in damages, though he had no purpose that they should have this effect. He is conclusively presumed to have intended the natural consequence of his acts. 3 Lawson on Rights and Remedies, Sec. 1224.

"He may have meant one thing and said another; if so, he is responsible for so inadequately expressing his meaning. If a man, in jest, conveys a serious imputation, he jests at his peril. Or he may have used ambiguous language which, to his mind, was harmless, but to which the bystanders attributed a most injurious meaning; if so, he is liable for the injurious phrase he selected." Newell, p. 301.

4. The Court below, in the beginning of the trial and before any testimony was submitted to the jury, announced to the parties that he would fix and enforce a rule with regard to witnesses offered to impeach and sustain character, as follows: that he would not permit more than six to be examined on each side as to the character, respectively, of the plaintiff and defendant, and four as to the char-

14 P—10

acter of any assailed witness. This rule was enforced by him over the objection of plaintiff. The plaintiff reached his limit in the examination of witnesses to sustain his character against the attack of the defendant, and by proper affidavits showed that he had in attendance a large number of other supporting witnesses whom he desired to present. The action of the Court in this particular is seriously complained of. There is no doubt that the trial Judge has the right, within reasonable limits, to restrict the number of witnesses to be examined as to any one point or fact. It is apparent that this right must exist, else by multiplying witnesses a trial might be indefinitely prolonged, to the serious detriment of public interests. 2 Elliott on Gen. Prac., Sec. 564. While this is so, yet it is true that in an action like this, involving character, it is the duty of the lower Court to exercise a liberal discretion in admitting testimony tending to sustain or overthrow it. It might be in such a case, where a narrow limit is fixed, that a party, by gathering in the enemies of his adversary, would succeed in producing a number of impeaching witnesses just within this limit, while the party so impeached might ·have the whole body of the county behind him, ready to testify as to his good name, yet, if equally restricted, this would be of no avail to him. A rule that worked such a result could not be tolerated.

In addition, we think it unwise, at least, if not

positive error, for the trial Judge, in the beginning, and before the testimony is introduced, to fix a limit upon the number of witnesses that he will permit to be examined. Necessarily each particular case will suggest where a reasonable limit has been reached, but this can only be determined as the trial progresses, and the necessities of the case thus develop.

The case will be reversed and remanded for a new trial.