## J. E. CONLEE *v.* HILLSMAN TAYLOR *et al.**

## (*Jackson.*   April Term, 1926.)

1. **APPEAL AND ERROR.** Wills. Limiting number of witnesses which
would be heard on question of testator's sanity, only question in
case, held error (Pub. Acts 1911, chapter 32).

   Court's refusal to permit contestant to introduce more than ten wit-
nesses on question of testator's sanity, the only issue in the case,
*held* error, and not within application of Pub. Acts 1911, chapter
32, prohibiting reversal for errors not affecting result. (*Post, pp.*
509-515.)

   Acts cited and construed: Acts 1911, ch. 32.

   Cases cited and distinguished: Johnsen v. Johnsen, 78 Wash., 423;
Hauptmann v. New York Edison Co., 160 App. Div., 917; Chicago
City Ry. Co. v. Wall, 93 Ill. App., 411; Green v. Phoenix Mut.
Life Ins. Co., 134 Ill., 310; Powers v. McKenzie, 90 Tenn., 182; Wil-
liams v. McKee, 98 Tenn., 145.

2. **WILLS.** Counsel offering to call excluded witnesses in jury's absence
held to have done all that was required to preserve question.

   In will contest case, where court limited number of witnesses which
would be heard on sole issue in case, and counsel asked permission
to call other witnesses in absence of jury, so that record might
contain their testimony, he did all that was required, and was not
bound to present affidavits on motion for new trial, or resort to any
other method of preserving their testimony. (*Post, pp.* 515-521.)

   Case cited and approved: Truslow v. State, 95 Tenn., 199.

   Case cited and distinguished: Railroad v. Hunton, 114 Tenn., 627.

3. **TRIAL.**

   On proper occasion, trial court may and should limit number of wit-
nesses on collateral matters, but on application should permit rec-
ord to show testimony excluded. (*Post, p.* 521.)

   *(1-3) On right to limit number of witnesses as to main or material
facts, see note in 21 A. L. R., 342; 26 R. C. L., p. 1033; 4 R. C. L. Supp.,
p. 1693; 5 R. C. L. Supp., p. 1435.

FROM GIBSON.

Appeal from the Circuit Court of Gibson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. Thos. E. Harwood, Judge.

John S. Cooper and H. H. Elder, for plaintiff in error.

W. R. Landrum, for defendants in error.

Mr. Kinney, Special Judge, delivered the opinion of the Court.

This is a contest over a will, and is before this court on *certiorari* to the court of civil appeals. The majority of that court were of the opinion that the judgment of the court below should be affirmed, but Judge Clark prepared and filed a dissenting opinion, in which Judge Faw concurred.

The will was contested, as stated in the pleadings, upon two grounds, the insanity of the testator and undue influence, but the record discloses no evidence directly showing undue influence. The trial judge made a rule limiting the number of witnesses on each side to ten.

The contestant, by counsel, moved the court to be permitted to examine more witnesses, but the motion was declined by the court; thereupon counsel for the contestant stated to the court that he had over twenty other witnesses present and under the rule, and asked the court to let him examine them, at least several of them, in the absence of the jury and before the court, in order

to have the record show just what the witnesses would testify. This was also declined by the court; whereupon counsel for the contestant moved the court to let him have the evidence, and, in the event that should be over-ruled, then to call the witnesses and have them testify before the court as to what they would say, in the absence of the jury, which motion was also overruled, and the contestant excepted.

The first assignment of error in this court raised the question: Was the trial judge in error in limiting the number of witnesses that the contestant could introduce along the line stated to ten?

Another assignment of error raises the question: Was the trial judge in error in refusing to permit the record to show what any of the twenty-three witnesses not introduced would have testified, had they been introduced?

The main issue, and in fact the only issue, in this case was as to the sanity of the testator. There was only one other issue made by the pleadings, and that was as to undue influence, and no proof was offered as to same.

The question is therefore presented as to whether or not the trial judge should limit the number of witnesses a party may deem necessary to introduce in order to make out his case on the main and only issue involved. We know this is frequently done by the trial judges in this State on collateral issues; but should such a rule be made as to the evidence on the main and only issue in the case?

The question has been much discussed by the text-writers and also by the courts in opinions involving this question.

In 26 R. C. L., section 37, p. 1033, it is said:

"So long as facts testified to by a party are not conclusively established, or admitted, they are open to further proof, and it is error to exclude evidence on the ground that it is cumulative. Where evidence is excluded on this ground, the court should not submit the issue of fact to the jury. It may be said to be a general rule that the trial court may, in its discretion, limit the number of witnesses who may be called to prove a particular link in the chain of evidence, and this is especially true as to expert witnesses, or impeaching witnesses, except where character is the main fact in issue. It would seem, however, that the number should not be limited as to the *main fact in issue,* where the witnesses are not experts, as in certain cases stated."

Mr. Wigmore, in his work on Evidence, vol. 3, section 1907, pp. 2520, 2521, says:

"Nevertheless the possibility of confusion through the exposition of a mass of details is not in itself a sufficient reason for refusing to hear those details, where the complication is inherent in issue. If the truth is complicated, the complication must none the less be struggled with, at whatever risk of baffled endeavor. It is where the complication and confusion are substantially unnecessary, or the small value of evidence is overwhelmed by its disadvantages, that a rule of evidence may properly intervene in prohibition. This much, in general, has been conceded on all hands; the effort has been to draw the line fairly between necessary and unnecessary complication. It has never been supposed that a party has an absolute right to force upon an unwilling tribunal an unending and superfluous mass of testimony, limited only by his own judgment or whim. But the difficulty is to define the situations

in which the testimony may be properly regarded as practically superfluous or relatively unprofitable. . . . In attempting to determine where this overbalance of disadvantage exists, rendering the admission of the tes-- timony relatively unprofitable, it may be assumed in advance that the facts testified to are revelant; more than this the party, of course, cannot claim, and less than this can certainly not be forbidden him. The question thus reduces itself in effect to that of the number of witnesses allowable upon facts concededly relevant. May any limitation be imposed at all? It is clear that no rule of limitation, if any be made, should in its terms be mandatory and invariable, and that the rule should merely declare the trial court empowered to enforce a limit, when in its discretion the situation justifies this; and such is in fact the form which the rule (so far as accepted) does take.''

In 21 Ency. Pleading & Practice, pp. 980, 981, it is said:

''In some of the cases a distinction is made in considering this question between collateral and chief issues. They hold that, while upon questions collateral to the facts in issue the judge has much discretion in limiting the number of witnesses called to testify to a single point, yet with respect to the chief issues litigated a party has a right to spread his whole case before the jury, and that the trial court may not limit the number of witnesses to be sworn by either party upon an issue which is material and one of the main issues in the suit, since it might well be that, had other witnesses been sworn, the verdict might have been the other way.''

In *Johnsen* v. *Johnsen*, 78 Wash., 423, 139 P., 189, the court held:

"We deem it proper to say that all litigants—and this includes those in divorce actions—are entitled to sustain their cases with a reasonable number of witnesses. While the trial court may and should exercise a discretion as to the number of witnesses that may be called in a case, or upon a particular issue in a given case, this discretion does not clothe the court with the arbitrary power to deny a litigant the right to offer testimony which reasonably tends to support his theory of the case, or to disprove the theory of his adversary."

In *Hauptmann* v. *New York Edison Co.*, 160 App. Div., 917, 145 N. Y. S., 696, the court said:

"The action of the court in restricting the number of witnesses whom the defendant should call to disprove the plaintiff's cause of action was without justification. The defendant had a right to call as many persons who were witnesses to the accident as could testify to the main issue involved, which was to be submitted to the jury."

In *Chicago City Ry. Co.* v. *Wall,* 93 Ill. App., 411, the court held:

"A limit upon the evidence presented might with propriety have been put, to the extent of the payment of cost for witnesses called beyond a certain number. The court might have ruled that, after a given number of witnesses had been examined upon the matter, all witnesses thereafter called and examined only upon the same matter should be made witnesses only at the cost of the party calling them. But beyond this we think the court could not thus impose such an arbitrary limit upon the amount of evidence which the litigant might present to maintain a material issue in the cause."

In 21 A. L. R., 342, it is said: "In some jurisdictions it has been held that as to the main fact in issue, or as to a controlling or material fact in issue, which tends to prove the case of a litigant or disprove that of his adversary, the trial court has no power to place a limit on the number of witnesses that may be introduced by the parties in support of such issue."

In support of this, cases are cited from the States of Arkansas, Iowa, Indiana, Kansas, Michigan, Missouri, New York, Washington, Texas, and Connecticut.

In *Mary J. Green* v. *Phœnix Mutual Life Insurance Co. et al.,* 134 Ill., 310, 25 N. E., 583, 10 L. R. A., 576, the court said:

"The trial court must, of necessity, exercise discretion as to the number of witnesses to prove a given fact that is not disputed, or that is merely collateral to the main issue, depending very much upon the nature and subject-matter of the inquiry. Familiar illustrations of cases in which the discretion could not be exercised, where the inquiry is single, as in cases of right of way, the grant of a prescriptive right, the proof of a custom, or the identity of persons or property which are disputed, will readily occur to any one. The phases of insanity, and the facts and circumstances which may tend to establish, and are proper for consideration, are so numerous and varied that a great number of witnesses may be required to determine the fact in issue. And it is found that persons of equal intelligence differ in opinion as to the inference to be drawn from such facts and circumstances. In such cases great latitude has always been allowed, and should prevail."

In *Powers* v. *McKenzie,* 90 Tenn., 182, 16 S. W., 559, this court sustained a rule of the trial judge limiting the

number of expert witnesses on handwriting to five, and said:

"Manifestly a trial judge must have some control over the dispatch of business in his court, and some discretion respecting the number of witnesses he will hear upon a specific line of inquiry incident to a case."

But we held also as follows: "The value and convincingness of expert testimony in arriving at the truth in this case are not so clear and evident that the court can see that the chancellor abused his authority in limiting the number of experts to five on each side."

This court also, in the case of *Williams* v. *McKee,* 98 Tenn., 145, 146, 38 S. W., 730, a later case, held as follows:

"The court below, in the beginning of the trial and before any testimony was submitted to the jury, announced to the parties that he would fix and enforce a rule with regard to witnesses offered to impeach and sustain character, as follows: that he would not permit more than six to be examined on each side as to the character, respectively, of the plaintiff and defendant, and four as to the character of any assailed witness. This rule was enforced by him over the objection of plaintiff. The plaintiff reached his limit in the examination of witnesses to sustain his character against the attack of the defendant, and by proper affidavits showed that he had in attendance a large number of other supporting witnesses whom he desired to present. The action of the court in this particular is seriously complained of. There is no doubt that the trial judge has the right, within reasonable limits, to restrict the number of witnesses to be examined as to any one point or fact. It is apparent that this right must exist, else by multiplying witnesses a

trial might be indefinitely prolonged, to the serious detriment of public interests.  2 Elliott on Gen. Prac., section 564.  While this is so, yet it is true that in an action like this, involving character, it is the duty of the lower court to exercise a liberal discretion in admitting testimony tending to sustain or overthrow it.  It might be in such a case, where a narrow limit is fixed, that a party, by gathering in the enemies of his adversary, would succeed in producing a number of impeaching witnesses just within this limit, while the party so impeached might have the whole body of the county behind him, ready to testify as to his good name, yet, if equally restricted, this would be of no avail to him.  A rule that works such a result could not be tolerated.''

We have not been able to find any reported case in this State not in harmony with the holdings of the courts in this State above quoted, and the able counsel for contestee has cited none in his brief; but it is contended that, in order to show that the trial judge was in error in limiting the opinion evidence to ten witnesses over the contestant's protest, the burden is on him to show that he had other witnesses, and what the said witnesses would have testified, if permitted to answer, and that it must also appear that the testimony thus offered was competent and material.

What the twenty-three other witnesses of contestant, who were not permitted to testify, would have testified, wo do not know, and the reason we do not know is because the able trial judge would not permit contestant to put any of said witnesses on the stand out of the presence of the jury, and thus have them to testify before him alone, so that their testimony could be embraced in the

bill of exceptions for the benefit of the contestant in the appellate court.

What occurred at this time before the trial judge is set out in the bill of exceptions as follows:

"The Court: You gentlemen have already examined seven witnesses along this line. I don't know how many more you have to examine along that line, but I will limit you to ten witnesses on this line, and if I were in your place I would choose the next best witnesses I had.

"Judge Cooper: I didn't catch what your honor said.

"The Court: I said, you gentlemen have already examined seven along this line, and I will limit you to ten.

"Judge Cooper: If your honor will let us consider that matter.

"The Court: I don't think I will."

Thereupon contestant introduced three additional witnesses, making ten in all, when the following occurred:

"Judge Cooper: If your honor please, did your honor say on some other line?

"The Court: Yes.

"Judge Cooper: I don't know that we have any witnesses on any other line, but we do want to move your honor, in view of the peculiarities of the issues involved here and the character of the case, we want to move your honor to permit us to examine more witnesses on this line.

"The Court: I think I will decline to let you do that. I think the jury will have just as good notion about this case as they would if there was a thousand witnesses.

"Judge Cooper: Well, we have only examined nine witnesses.

"The Court: Ten I have down here.

"Judge Cooper: We have over twenty witnesses more here under rule, if your honor please, and we would ask your honor to let us examine some of those witnesses, at least, several of them, and if your honor should decline to let us examine any witnesses to get the benefit, as I understand the rule, the benefit of what they would say, of course, the court and counsel is not bound to take our statement as to what the witnesses would say, and we might make the statement, but your honor knows and understands, in any event, the reviewing court, in passing upon the matter involved, we would have to show just what the witness would say, and in that point of view we would ask your honor to let us put the witnesses on the stand in the absence of the jury before your honor.

"The Court: Oh, no; if I did that, I would let you put them on before the jury.

"Judge Cooper: Then we move, your honor, to let us have the evidence in there, and, in the event that your honor overrules, we will ask your honor to let us call the witnesses and have them testify or state before the court as to what they will say.

"The Court: I overrule that motion, too.

"Judge Cooper: We want the record to show the names of the witnesses they didn't hear.

"The Court: You can furnish the stenographer a list of the other names and say you offer them.

"Judge Cooper: I only wish to add that this character of issue in this case is different from any ordinary issue. On an ordinary issue witnesses—just two, three, or four witnesses to one fact is all the court would want in an ordinary case; but the character of issue in this case is very different from the ordinary case, and so from that

point of view I respectfully submit to your honor we should be permitted to examine further witnesses before the court, and urge that view upon your honor.  Your honor declined to permit us to do that?

"The Court: Yes.

"Judge Cooper: Your honor also declined to let us examine them in the absence of the jury?

"The Court: Oh, yes; if I was going to let you examine them in the absence of the jury, I would let you examine them before the jury; wouldn't have any need for that.

"Judge Cooper: Of course, as your honor says, we have got the right to avail ourselves of the exception.

"The Court: Yes, sir.

"Judge Cooper: We will furnish the stenographer a list of the witnesses, and let the record show we stand ready to introduce them, but your honor would not permit us to introduce them.

"With that view the defendant rests."

It thus appears that the counsel for contestant did offer, and in fact move the court to permit him, to introduce at least some of the witnesses before the trial judge in the absence of the jury, and thus testify, in order that their testimony could be preserved in the bill of exceptions and be considered by the appellate court.  This motion and request was overruled, and contestant excepted.

This is "the most approved practice," as held by this court in *Truslow* v. *State*, 95 Tenn., 199, 31 S. W., 987; but it is contended that when this procedure was denied or refused, and the motion overruled by the court, contestant should have resorted to the affidavits of the witnesses thus excluded, and should have presented them on motion for a new trial, or resorted to some other method.

We cannot agree to this contention. It is true that this court has adopted no definite and fixed rule of procedure in such cases, but it has stated that the procedure offered and moved in this case is "the most approved practice." We do not think a litigant should be required in such instance to resort to every method and procedure to have his case properly presented to the appellate court, but, when he adopts the course of procedure which the highest appellate court of the State has said is "the most approved practice," he has done all that he should be required to do.

It is also contended that the error complained of is not shown to have affected the result of the trial, and the act of 1911 (Pub. Acts 1911, chapter 32) is invoked, providing that no judgment shall be set aside or new trial granted for any error in any procedure in any case, unless in the opinion of the appellate court it shall affirmatively appear that the error complained of has affected the results of the trial.

In our opinion, the act of 1911 has no application to this case.

It is impossible in this case for us to ascertain from the record whether the error complained of affected the result of the trial or not. Had the testimony of the excluded witnesses been set out in the bill of exceptions, we might, after reading and considering it, come to some conclusion about its competency and materiality, and whether or not cumulative, or whether or not the error complained of affected the result of the trial; but it is impossible to do so in the present state of the record.

In *Railroad* v. *Hunton,* 114 Tenn. (6 Cates), 627, 628, 88 S. W., 182, 187, the trial judge had refused to allow

a witness to testify as to the value of a lot of land, and refused to permit the record to show what his answer would have been, and this was assigned as error in the appellate court, and in ruling on the same the court said:

"But it does not apply where the circuit judge rules out an entire line of competent evidence, or refuses to hear any examination thereon, just as it does not apply when he holds that a witness is incompetent, and refuses to hear him at all."

This court and many others have held that the opinion of a nonexpert witness in a will contest is chiefly valuable on account of the facts which he details, and the conduct, appearance, and talk of the testator. Many, if not all, of these would likely be different at different times, and on different occasions, and under different circumstances, and hence the facts detailed, the conduct and talk of the testator, be differently stated by different witnesses, according to the different circumstances and occasions under which they may observe him. In many courts, it is held that the number of witnesses should not be limited at all in such cases, or in any case, as to the main fact in issue, or to a controlling or material fact in issue in the case, and we think this is the better practice. We therefore hold that a trial court should not limit the number of witnesses of either party, plaintiff, or defendant, upon the only issue, or upon any one of the controlling issues in a suit. The matter of increased cost, where the number of witnesses is not limited, considered by some courts, is a matter of secondary importance, and is amply provided for by our statutes as to costs in such cases. The incident delays of the courts, to the alleged detriment of the public interest, where the number of witnesses is

not limited, is also a matter of secondary importance, compared to the attainment of justice, and to the rights of the plaintiff or his adversary to have his whole case presented to the court and jury upon the only or any controlling issue, so that the right, the truth and justice, of the case may be reached. The public interest is really better served in this way than when this right is denied.

Of course, the trial court may, and on proper occasions should, in the exercise of a sound and reasonable discretion, limit the number of witnesses on collateral matters and as to expert witnesses, and even then, we think, if other witnesses are offered after the limit has been reached, that the trial judge should, on proper application, permit the record to show what their testimony would be, so that the appellate court can determine whether or not his discretion has been abused.

Much has been said in the briefs and arguments about what the excluded witnesses would have testified, and whether along the same line the ten had testified or not, but no one can tell from the record how this would have been; also that the contested will is a sensible and proper will for the testator under the circumstances and conditions, but we do not deem it wise or proper for us to discuss this matter, in view of the conclusions we have have reached.

For the reasons above set out, we sustain both of said assignments, and reverse the case, and remand same for further proceedings.