CHAPMAN et al. v. UNITED STATES.
No. 3608.

Circuit Court of Appeals
Tenth Circuit.
Aug. 9, 1948.

Rehearing Denied Aug. 30, 1948.

Writ of Certiorari Denied Nov. 8, 1948.
See 69 S.Ct. 134.

---

Laing, Gray & Smith, Henry S. Gray, and John R. Becker, all of Portland, Or., for appellant.

King, Wood, Miller & Anderson and Robert S. Miller, all of Portland, Or., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

Circuit Court of Appeals
Ninth Circuit.
Aug. 18, 1948.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

Earl A. Brown, of Ardmore, Okl. (John M. Poindexter, of Ardmore, Okl., on the brief), for appellants.

Curtis P. Harris, Sp. Atty., Department of Justice, of Oklahoma City, Okl. (A. Devitt Vanech, Asst. Atty. Gen., and John F. Cotter and George S. Swarth, Attys'. Department of Justice, both of Washington, D. C., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The only triable issue in this case is "just compensation" for agricultural lands taken by the Government for public purposes. We reversed for a new trial, United States v. Chapman, 10 Cir., 158 F.2d 417, and the landowner has appealed from a judgment on a jury verdict for $160,000, contending first that the trial court erred in limiting the number of expert witnesses on the issue of value of the land involved.

In pursuance of a pre-trial the court notified the parties by letter that in its judgment four expert witnesses on the ultimate issue of value would be sufficient. On the trial of the case four witnesses on each side testified to ultimate value, but fifteen witnesses, including the landowner, were permitted to testify for the landowner to constituent elements of value.

There can be no doubt of the power of the trial court, in the exercise of a sound and reasonable judicial discretion, to limit the number of expert witnesses to the issue of value. Lewis Eminent Domain, 3rd Ed. Vol. 2, Section 653, p. 1118; Wigmore on Evidence, 3rd Ed. Vol. 6, Section 1908, p. 578. It is but a rightful concession to the power of the trial court

to direct the course of the trial in the interest of the proper administration of justice. Vol. 53 Amer.Jur.Trial, Section 107, p. 95. The contrariety comes with the application of the rule of judicial discretion. Thus, it has been held in a condemnation proceedings that a limitation of four witnesses on the side was in the attendant circumstances an abuse of discretion. See, St. Louis, M. & S. E. R. Co. v. Aubuchon, 199 Mo. 352, 97 S.W. 867, 9 L.R.A.,N.S., 426, 116 Am.St.Rep. 499, 8 Ann.Cas. 822. It has also been held that the trial court should not undertake to limit the number of witnesses introduced by either party until it becomes obvious that further testimony would be merely cumulative, hence of no probative value. Henson & Sons Coal Co. v. Strickland, 152 Ark. 203, 238 S.W. 5, 21 A.L.R. 328. See also Conlee v. Taylor, 153 Tenn. 507, 285 S.W. 35, 48 A.L.R. 940 and cases collected in annotation 21 A.L.R. 335; 48 A.L.R. 947.

■ Here the landowner contends that since the limitation was imposed in advance of the trial, the court had no oportunity to exercise sound judicial discretion and it was therefore, arbitrary. Some courts think it better practice to impose the limitation either in advance or at the commencement of the trial, or as soon as the necessity for it is reasonably apparent. See cases collected in annotation, 21 A.L.R. 348, sub-division 5. Mr. Wigmore expresses the view that the requirement is plausibly fair and "is usually proper when feasible". We agree with Wigmore that "the trial court's discretion should be left to determine whether such a prior notice was feasible and desirable under the circumstances". See Wigmore on Evidence, 3rd Ed., Vol. 6, Sec. 1908, p. 586.

The limitation was imposed only after a pre-trial conference had developed the issues and the landowner's counsel had outlined the nature of his proof on all the constituent elements of value. In his letter to counsel limiting the number of witnesses on the issue of value to four, the trial judge stated that "after hearing the evidence" he might change his views; that it would be his purpose to see that the case was "fairly submitted by as many witnesses as may reasonably be required".

■ On the trial of the case the landowner did not offer additional witnesses on the ultimate issue of value nor did he raise the question for the further consideration of the court. The record shows that every element of value was fully and completely treated. The opinions of the experts were irreconcilable. The trial court so instructed the jury and permitted them to view the land involved in order that they might be able to use their own judgment. No prejudice whatever is shown by the action of the court in limiting the number of witnesses, and we hold that it did not commit error in doing so.

■ During the direct examination of Government witness Kelchner, he was asked if anyone went with him to view the land. When he stated "yes", he was asked "who", and he answered "Roy Oakley"; and then counsel said, "you and he fixed the valuation", and the answer was "yes". The landowner complains that this testimony had the effect of giving the Government five expert witnesses instead of the four allowed, because it reinforced Kelchner's testimony by giving the jury the impression that someone else agreed with him. No objection was taken to the testimony at that time. The landowner says that he did not object because he assumed that Oakley would later be called as a witness. But, the landowner never did call the matter to the attention of the court, and it therefore had no opportunity to correct any impression the jury might have gained. In any event, the court should certainly not be held to have committed reversible error because of any untoward statement which could have little, if any bearing upon the case.

The landowner also complains of the court's reference to his withdrawal of the estimated just compensation, deposited with the court. On direct examination, the landowner stressed the productivity of the land and the profits he had realized from the operation of the farming and cattle business. On cross-examination, on the question of

profits, he related how he had paid several hundred thousand dollars on debts, had an equity in the land and 1,800 head of cattle, and other land not involved. Counsel for the Government retorted that a big part of that which he had paid on the debts was paid to him in 1944. The landowner answered, "Man, I owed so much that wasn't a drop in the bucket." Counsel for the Government answered that it was $144,000. In that same connection, the landowner contends that the court's recital of the $144,000 deposit in accordance with state laws, had the effect of telling the jury that the land had been appraised by three commissioners, as the first step in a condemnation proceedings, and that the commissioners' report was incompetent and prejudicial evidence in the trial of the case.

■ When the landowner's counsel objected, the court explained to the jury the statutory procedure followed in condemnation proceedings, stating that when the Government took the land, it was required to put up the estimated value, and that it could be withdrawn by the landowner at any time he saw fit. When the landowner's counsel again objected the court explained that it was the privilege of the landowner to withdraw the estimated compensation, but that it had no bearing whatsoever on value. Again in its instructions to the jury, the court explained the procedure followed with reference to the depositing of the estimated just compensation, but that it was no evidence of value, and should not be taken into consideration in the determination of that issue. We do not think that by the fartherest stretch of the imagination, it can be assumed that the remarks of the court had the effect of admitting in evidence the commissioners' appraisal. Moreover, the court's instructions to the jury cured any possible defect.

A number of witnesses, including the landowner, testified to the very high productivity of the land involved. Counsel for the Government questioned the landowner very closely on the profits realized from year to year in the operation of the ranch and farming lands, and confronted him with his income tax reports for a number of years to show that he realized no profits from the operation of the ranch. He also offered as part of cross examination the assessment returns in the counties in which the land is located, to show that he did not own or graze the great numbers of cattle about which he had testified.

■ The contention is that profits derived from a business conducted on property is too speculative, uncertain and remote to be considered as a basis for determination of market value for property in a condemnation proceedings. Citing cases collected in annotation 7 A.L.R. 163 and United States v. Meyer, 7 Cir., 113 F.2d 387. The rule contended for is not without its exceptions and qualifications. "Profits derived from the use of property itself may be shown whenever such profits would be an indication of value". Lewis Eminent Domain, 3rd Ed. Vol. 2, Sec. 727, p. 1274. Thus, courts have found no impropriety in the admission of testimony concerning the amount of crops yielded and the price obtained therefor, for the single purpose of showing the reasonableness of value fixed by the evidence of witnesses, City of Cushing v. Pote, 128 Okl. 303, 262 P. 1070, or for the express purpose of showing the productivity and adaptability of the land taken. City and County of Denver v. Quick, 108 Colo. 111, 113 P.2d 999, 134 A.L.R. 1120. But, be that as it may, the court finally ruled that the income tax returns were entirely too remote to be of any value and positively and unequivocally instructed the jury not to consider them as an element of value, or for any purpose. It also expressly restricted the assessment returns to the question of the number of cattle grazed upon the lands involved, and counsel for the landowner stated he thought that "cured" the error.

■ The court also permitted Government counsel to cross examine the landowner concerning prices paid for part of the lands involved in 1936, 1939 and 1942, and

excluded the testimony of a witness on a previous trial concerning what he had paid for 480 acres of land in this vicinity in 1917. It is contended that the purchases in 1936 and 1939, under depressed conditions, had no bearing or relevancy on the value of the land in 1944, and that it was therefore error to admit the testimony of these purchases or sales. In any event, it is said that the admission of this testimony, and the exclusion of the 1917 sale, was discriminatory and error.

At first blush, it does seem that the trial court discriminated in favor of the Government on the admission of evidence of sales. But the 1936 and 1939 sales complained of were developed on cross examination to impeach the landowner's direct testimony. When the court came to instruct the jury, it was very careful to tell them that the sales had only a remote bearing upon the 1944 value. In speaking of the evidence of productivity back in 1922 and 1924, the court stated that the more remote the testimony, the less weight should be given it, and that the same rule applied as to values back in 1917 and 1918. The court was also careful to instruct the jury that if it had expressed any opinion in the trial of the case, it was their privilege and duty to disagree.

The landowner also complains of the testimony of one Woody Hunt, contending that he was not qualified as an expert; and, that he had never seen the lands nor examined them sufficiently to be able to competently testify concerning their value. We have repeatedly said that the qualifications of witnesses to testify as experts and the weight to be given their testimony are matters peculiarly for the trial court, and are reviewable only for an abuse of judicial discretion. Bratt v. Western Airlines, 10 Cir., 155 F.2d 850; Korth v. Zion's Savings Bank & Trust Co., 10 Cir., 148 F.2d 170. The weight of Hunt's testimony was for the jury and the court did not err in allowing him to testify.

An examination of the whole record convinces us that the case was well and fairly tried, and the judgment is affirmed.