SHIELDS *v.* STATE.

(*Knoxville*, September Term, 1953.)

Opinion filed July 23, 1954.

84

MEARES & THOMAS, of Maryville, for plaintiff in error.

KNOX BIGHAM, Assistant Attorney General, for the State.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Plaintiff in error was convicted of shooting a deadly missile into an automobile in violation of Code Section 10825, and was sentenced to 60 days in the workhouse. He has perfected his appeal and assigned error.

The first assignment goes to the preponderance of the evidence against the verdict.

Plaintiff in error admits that he fired a pistol shot into the rear fender of the automobile of one Ted Denton, and that, as the facts have since been developed, he had no technical right to do so, but in order to overcome the presumption of guilt he insists that he did so in good faith in an effort, as he then believed, to prevent the escape of a felon, and hence insists there is no evidence of malice.

The State proved that on the night of May 9, 1953, Ted Denton, a single man, 26 years of age, while accompanied by a Miss Maude Spencer in his automobile, had driven into the grounds of the Gateway Restaurant, where they intended to have dinner. They had been there a few minutes when he backed his car to the kitchen door at the side of the building, and ordered dinner. As he started out toward the highway, two shots were fired at his car, one striking the rear fender, the second, the front fender. He speeded up and drove rapidly on to the highway and down a short distance to another restaurant, where he reported to his friends there what had happened, and called the Sheriff and insisted that his car be searched for whisky. He had been fined previously for having a small amount of whisky in possession. It was definitely established that he had none on this occasion.

Two witnesses who had seen the shooting at the Gateway Restaurant came to this other restaurant and told

Denton that the shots were fired by plaintiff in error and they so testified.

Shortly afterwards the accused, who was a constable, and another constable named Gheens, according to Denton, rode by this latter restaurant shortly thereafter, and Denton waved and yelled at them, but they did not stop. Neither that night nor at any later time did they arrest Denton, although some weeks later a warrant was procured for Denton, but Gheens said he did not serve it because he learned of the present prosecution, and did not want it to appear to be retaliatory. Denton was corroborated by his young lady companion, as well as by the cook at the Gateway Restaurant, as to his having ordered dinner at the kitchen door.

It is plaintiff's insistence that Denton had a reputation for handling whisky and that he had raided him previously; that on this evening he received information from a reliable source that Denton was about to pull out from the Gateway Restaurant with a load of whisky; that accompanied by the other officer, they went to the Gateway Restaurant, he going to the rear and Gheens going to the front of the building, and that as they came within the proximity of Denton's car, he executed some odd maneuvers and then started off at a high rate of speed, at which point the accused said that he fired at the rear tire. He said also that it looked to him as if Denton was trying to hit or run over Gheens with his car, was an additional reason why he fired the shot. He testified that he fired only one shot and Gheens testified that Gheens fired the other shot, but they were contradicted by two other witnesses who said the accused fired both. He claimed also that he sought to find Denton immediately to arrest him, but was unable to do so. It does not appear that he made

any effort the next day, or at any time later, to do anything further about the matter.

When asked for the name of the informer, he refused to disclose the name and stated in the early part of his examination that he refused to do so. When finally required to do so by the Court, he gave the surname of an alleged individual, but he was unable to give any information about this individual as to where he had been or was at that time, or at the time of trial.

■ The jury rejected the plaintiff in error's evidence and we do not think that the evidence preponderates against the finding of the jury.

The next three assignments arise out of the following situation.

It was the insistence of the plaintiff in error's counsel that plaintiff in error's information that a felony was being committed would justify an arrest without a warrant. He therefore asked plaintiff in error to tell what happened, and so on, on that occasion. The State objected to his being allowed to state what his information was until he had disclosed the name of the informer. After argument between counsel, the Court said:

"Now, I want to warn Mr. Shields that under the law that he would have to tell who it is. But now, of course, I don't think he would have to tell it now. Because this is without a search warrant, they would have a right to go into whoever it is and know whether or not as to his credibility, and as to who told him, and have a right to get this person to contradict. I want to warn you that, but now, I'll allow you to answer the question."

In other words, the Court ruled that plaintiff in error could relate what information he had at this time without

disclosing the name of the informer, but that eventually he would have to disclose it. At this point, after some further discussion between Court and counsel, the witness flatly refused to disclose the name. After some further argument the Court said this:

"I want to warn Mr. Shields. Now, you are in trial here in a serious case, and this makes a different situation. It takes it away from any secrets that you might want to keep for anybody. You are on trial in a serious case and it's your duty to let this jury know the facts so that they can decide this case and do what's right and fair. And it's in your own behalf for you to tell who gave you the information. That's in your own behalf. This Court is not trying to get you to do something that's wrong, but under the law you are going to have to do it."

The witness was then allowed to state to the jury the information that he had obtained from this undisclosed informer, and after he had finished, he was asked on cross-examination to name the informer. Whereupon the Court said:

"Mr. Shields, in this kind of a case, I'll have to ask you to answer the question. I can understand, Mr. Shields, I can understand your reluctance, and all that, but this case is of such major importance that I think you should answer."

Then the witness said, a boy by the name of Freeman.

Following this, the plaintiff in error was asked a good many questions about the identity of this Freeman and his answers disclosed that he knew nothing about Freeman particularly, nor about his whereabouts or where to locate him.

It will be observed that the Court did not strike out

this evidence, that is, this testimony of the plaintiff in error as to what information he acted upon.

The second assignment of error, therefore, is to the effect that it was error for the Court to require the disclosure of the name of the informer as a condition to permitting him to detail the facts leading up to the alleged offense. In argument it is said that it was highly prejudicial in that it prevented an orderly presentation of the defense, and discredited the plaintiff in error with the jury.

We think the question is controlled by the ruling in *Smith* v. *State,* 169 Tenn. 633, 90 S. W. (2d) 523, 524, wherein it was held that in an arrest without a warrant upon " ' a charge made upon reasonable cause,' " the officer should be required to reveal the identity of the person making the charge, as well as the nature of the charge. The Court and jury have to pass upon the officer's justification or lack of same, and in that case the Court said a defendant should not be bound by an officer's statement unless the source of the charge be disclosed because an unscrupulous officer might vindicate any arrest, if there could be no further inquiry as to the source of the information.

We think it makes no difference that the officer, himself, is the plaintiff in error in this case, and he was seeking to justify the arrest partly on the theory that he had reliable information that a felony was about to be committed.

The third assignment is that it was error for the Court, in the presence of the jury, to state that this was a serious case, and it is said that this was comment on the weight of the evidence and was prejudicial to plaintiff in error.

■ It seems obvious to us from the manner in which it was said, and we have gone into detail above in reciting how it all occurred to show that all the Court was saying was such a charge is a serious one. There is no reasonable basis for the assertion that the Court was saying that the plaintiff in error was guilty, or probably guilty, or that he was commenting on the evidence.

The fourth assignment arises out of the occurrence during the cross-examination of the other officer, Gheens, when he was asked who was the informer. There was an objection. And then the Court said:

"Now I want to clear this, gentlemen. I don't want to be unfair to anybody. But I want to ask this question. Is it the theory of defendant that this man, these men, had a right to search this car?"

To this counsel gave an unresponsive answer. After which the Court and counsel indulged in a discussion in which the Court insisted that he was entitled to know whether that was part of the theory of the defense, and counsel for the defense insisting that he was relying upon the facts of the case, and that he could not be pinned down to one theory, in the course of which discussion the Court stated to counsel that he thought he was being inconsistent. The Court stated that if that was not part of the theory, that all of the evidence about the information obtained from the informer was incompetent, and that the Court was entitled to know whether that was part of the theory so that he could properly rule on the question.

■ We think the Court had a right to have this information and we do not think that in seeking to obtain it, that he confined the plaintiff in error to any one theory, or that he indicated anything as to the validity of any other defense that was sought to be made. Counsel

finally admitted that that was part of the theory, and hence the Court properly ruled that the witness should state the name of the informer, although it turned out that this witness did not know the informer.

By the fifth assignment it is said that the Court in charging the jury with reference to the right of an officer to .arrest without a warrant placed emphasis upon a determination of whether the plaintiff in error had a right to arrest, which was an affirmative defense, rather than upon his guilt or innocence of feloniously shooting into an automobile, which was the offense with which he was charged and on which the State had the burden of proof.

We do not find any merit in this criticism. The Judge first charged the statute, he then charged that an officer may lawfully proceed to arrest without a warrant, any person when the officer has, with reasonable cause, been led to believe that the person has committed, is committing, or is about to commit, a felony. He then charged the theory of the State, and then the theory of the defense.

The sixth assignment complains that the Judge failed to charge the jury that the plaintiff in error had a right to shoot into the prosecutor's automobile if he believed the prosecutor had made a felonious attempt to injure Gheens. It is said that the charge limited this right to an actual striking of Gheens, but a reading of the charge does not bear out this contention. The Court said :

"If the prosecutor was not transporting a gallon or more of liquor, or was not wilfully or feloniously

*attempting* to drive his car into Gheens, then he was not committing or attempting to commit a felony.'' (Our italics.)

The assignment is overruled.

■■ The last assignment arises out of the fact that the Court limited the number of character witnesses to six. Counsel alleges this to be error on the authority of *Williams* v. *McKee*, 98 Tenn. 139, 38 S. W. 730. This was a slander suit in which the character of the plaintiff was the primary question, and the Trial Court limited the number of witnesses before any evidence was introduced. This was held to be error. However, it is apparent from that case, as well as from *Conlee* v. *Taylor*, 153 Tenn. 507, 285 S. W. 35, 48 A. L. R. 940, that, although the Court should not have a rule or make a rule in advance of the adduction of the evidence limiting the number of witnesses in any case the Court is vested with a sound discretion in regard to limiting the number of witnesses, and in the Conlee case, it is particularly pointed out that on a collateral issue, on a proper occasion, the Court may and should, in its discretion, limit the number of witnesses. In the present suit of course, the character of the accused was a collateral matter, and furthermore, the State introduced no witnesses to the contrary. We do not see how the accused could have been prejudiced in any event.

All assignments of error are overruled and the judgment of the lower Court is affirmed with costs against the plaintiff in error.