## AMERICAN ZINC CO. *v.* D. F. GRAHAM.

### (*Knoxville.* September Term, 1915.)

1. **MASTER AND SERVANT.** Safe place to work. Mines. Statute.

Laws 1903, ch. 237, sec. 28, requiring that the buckets used in mines shall be covered and that there shall be certain structures inside the shaft so as to make the ascent and descent of employees safe, applied to a mine not fully in operation, which had sunk a shaft more than 250 feet, from the foot of which ran a drift to an old shaft, intended as a means of conducting air into the mine, and which was used by the employees in going to and returning from their work. (*Post, p.* 589)

Acts cited and construed: Acts 1903, ch. 237, sec. 28.

2. **MASTER AND SERVANT.** Safe place to work. Mines. Statute. Contributory negligence.

In such case a servant, knowing that the master had failed to comply with the statute requiring certain structures inside the shaft to make it safe for employees going up and down, did not assume the risk; and the fact that the statute fixed a penalty for its violation did not exclude his action for damages. (*Post, pp.* 589-591.)

Cases cited and approved: Streeter v. Western Wheel Scraper Co., 254 Ill., 244; Fitzwater v. Warren, 206 N. Y., 355; Curtis-Cartside Co. v. Pribyl, 38 Okla., 511; Poli v. Numa Block Coal Co., 149 Iowa, 104; Low v. Clear Creek Coal Co., 140 Ky., 754; Narramore v. Railroad, 96 Fed., 298.

3. **MASTER AND SERVANT.** Master's negligence. Violation of statute.

A master's violation of the terms of a statute requiring structures to secure safety in mine shafts was negligence *per se*, and made him responsible for all injury suffered as a direct consequence thereof. (*Post, p.* 591.)

American Zinc Co. v. Graham.

Cases cited and approved: Queen v. Dayton Coal & Iron Co., 95 Tenn., 458; Riden v. Grimm Bros., 97 Tenn., 220; Railway v. Haynes, 112 Tenn., 712; Adams v. Iron Co., 117 Tenn., 470.

---

FROM KNOX. ·

---

Appeal from the Circuit Court of Knox County to the Court of Civl Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—Von A. Huffaker, Judge.

Pickle, Turner & Kennerly, for plaintiff.

Cornick, Frantz, McConnell & Seymour, for defendant.

Mr. Chief Justice Neil delivered the opinion of the Court.

Graham sued the zinc company to recover damages for an injury received by him while being drawn up a mine shaft belonging to the company. He recovered a judgment in the circuit court of Knox county for $500, and on appeal to the court of civil appeals that judgment was sustained. The case was then brought here by the writ of *certiorari*.

Plaintiff in error, the zinc company, is the owner of a zinc mine, and also a factory for reducing the ore. At the time the injury occurred the factory had not been built, nor had the mine been put fully in operation. A shaft had been sunk to the depth of more than two hundred and fifty feet. From the foot of this

shaft a drift was run to the location of an old shaft on the property with a view to drilling upwards and reaching the bottom of that shaft, thus connecting the two. This was intended as a means of properly conducting air into the mine. The rock and ore broken down in the course of running the drift were carried up through the new shaft by a metal bucket drawn over a windlass propelled by steam. In the same manner the employees of the company working in the mine were drawn to the surface. When employees were to be drawn up, notice was given by a servant of the company standing at the foot of the shaft by means of a wire connected with a bell at the surface; three taps being given to indicate that an employee was entering the bucket. The wall of this shaft was not protected in any manner, but was in the state left by the excavation. The Acts of 1903, ch. 237, sec. 28, requires that certain protections shall be furnished for the security of employees. One of these is that the bucket shall be covered; another is that there shall be certain structures inside the shaft to make-safe the ascent and descent of the employees. None of these requirements were complied with. The reason assigned by the company is that they wanted first to make the air connection complete and that they could not do both at once. It is also insisted that the mine was not complete, and that the statute did not apply to an incomplete mine. The plaintiff in error, while being drawn up through this shaft, was considerably injured by striking against the walls caused by the swinging of the bucket.

American Zinc Co. v. Graham.

The first question to be determined is whether this statute applies to a mine incomplete in the respects herein stated. We are clearly of the opinion that it does. There is the same reason for protecting the miners going up and down the shaft in an incomplete mine as in one that is complete. The shaft itself was complete, except the building of the structures therein which the statute requires. This shaft had been put down some weeks, and, as already stated, the miners were then engaged in running a cross entry or drift from the foot of it. Of course, they had to go down this shaft in getting to their place of work on the drift, and at night had to be transported up the shaft to their homes. There was as much need to them of this protection as there ever could be.

The second inquiry is whether the miner assumed the risk of the situation, knowing, as he did, that the plaintiff in error had failed to comply with the statute. To hold that he did assume the risk would be equivalent to a repeal of the statute, since it would be a continuing invitation to the company to forbear compliance with its provisions. The statute was passed under the police power of the State for the purpose of protecting those who are unable to protect themselves, occupying as they necessarily do a position much inferior in financial security to that of their employers; the physical necessity of themselves and their families making it essential that they should have work in order to secure the means of sustenance. It would defeat this beneficent purpose if it should be admitted as a

sound principle that a failure of the employer to obey the statute could be condoned by the employee. Such a conclusion would place the employer in the position of power which only the legislature should occupy, since it would enable him to either destroy or maintain the policies of the State according to his own will and purpose. Moreover, it would be inconsistent to admit a mutual regulation by employer and employee of a matter which had been deemed of sufficient importance to require an act of the legislature to express a specific State policy. Such acts being passed to define rights and duties for the better regulation of business, and hence indirectly for the better regulation of society, must be sustained. They are not amenable to the doctrine of assumption of risk for the reasons we have stated, since a contrary decision would result in the courts loosing that which the legislature has bound. Nor is the result changed by the fact that the statute fixes a penalty for its violation. The doctrine that the assumption of the risk does not apply is in harmony with the purpose of the penalty, and there is nothing in the act to indicate that the penalty was exclusive of the employee's right to maintain an action for damages. The views herein expressed are sustained by the great weight of authority in this country. The question has never before been discussed in this State, so far as we are aware, yet has received much discussion in other jurisdictions. The cases are very numerous and will be found in the cited cases themselves and the notes to the cases. *Streeter.*v. *Western Wheel Scraper Co.,*

254 Ill., 244, 98 N. E., 541, 41 L. R. A. (N. S.), 628, Ann. Cas., 1913C, 204, and note; *Fitzwater* v. *Warren,* 206 N. Y., 355, 99 N. E., 1042, 42 L. R. A. (N. S.),1229, and note; *Curtis-Cartside Co.* v. *Pribyl,* 38 Okl., 511, 134 Pac., 71, 49 L. R. A. (N. S.), 471, and note; *Poli* v. *Numa Block Coal Co.,* 149 Iowa, 104, 127 N. W., 1105, 33 L. R. A. (N. S.), 646, and note; *Low* v. *Clear Creek Coal Co.,* 140 Ky., 754, 131 S. W., 1007, 33 L. R. A. (N. S.), 656, Ann. Cas., 1912B, 574; *Narramore* v. *Railroad,* 96 Fed., 298, 37 C. C. A., 499, 48 L. R. A., 68.

We have several cases in this State which hold that a violation of the terms of a statute is negligence *per se,* and renders the person guilty of such conduct responsible for all injuries which may be suffered as a direct consequence thereof among which are *Queen* v. *Dayton Coal & Iron Co.,* 95 Tenn., 458, 32 S. W., 460, 30 L. R. A., 82, 49 Am. St. Rep., 935; *Riden* v. *Grimm Bros.,* 97 Tenn., 220, 36 S. W., 1097, 35 L. R. A., 587; *Railroad* v. *Haynes,* 112 Tenn., 712, 81 S. W., 374; *Adams* v. *Inn Co.,* 117 Tenn., 470, 101 S. W., 428. But we have no case on the narrow point covered by the preceding discussion and the authorities cited thereunder. However, in *Adams* v. *Inn Co.,* the same principle was applied to the case of a boarder at a hotel which, at the time of its destruction by fire, had not been equipped with fire escapes as required by statute.

We find no error in the judgment of the court of civil appeals, and it must be affirmed.