HOLLISTON MILLS OF TENNESSEE *v.* McGUFFIN.

(*Knoxville,* September Term, 1940.)

Opinion filed November 23, 1940.

Rehearing denied January 13, 1941.

(1)

4

SIMMONDS & BOWMAN, of Johnson City, for plaintiff in error.

HARRY L. GARRETT, of Kingsport, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an appeal in error from a judgment in the Kingsport Law Court for $1,000 in favor of John Mc-Guffin based on the second ground of a declaration charging violation of Code, Sections 5338, 5339 and 5340, which were originally Sections 8, 9 and 10 of Chapter 110, Public Acts of 1919, known as the workshop and factory statutes. The specific violation charged was the failure of the defendant Holliston Mills to install and maintain such ventilation machinery, such as fans, blowers, etc., as would protect its employees, and particularly John McGuffin, plaintiff below, from the injurious effects of poisonous fumes and gases generated in the course of the operation of the plant.

It was alleged in the declaration that a former action had been instituted which had been removed by the defendant to the Federal Court, where a non-suit was taken, and that the present action had been instituted within twelve months thereafter.

The defendant Holliston Mills filed pleas of not guilty and of the Statute of Limitations and issue was joined.

In the progress of the trial the defendant Mills raised by special pleas the additional defense that the Act of 1919, hereinbefore mentioned, is unconstitutional, specifically because (1) it is too indefinite, furnishing no sufficiently certain standard to enable persons affected thereby to determine as to its observance, or violation; and (2)

because violative of Section 2, Article 2, and Section 8, Article 1 of the State Constitution and the 14th amendment to the Federal Constitution.

The case was first carried to the Court of Appeals and by that Court transferred to this Court, upon the assumption that substantial constitutional questions were presented.

Holliston Mills has assigned errors challenging the judgment of the trial court, first, in overruling defendant's motion for a directed verdict of the general ground that there was no evidence to support a verdict for plaintiff; second, in refusing to hold the statutes relied on unconstitutional; and, third, in limiting the defendant to five witnesses as to material and determinative facts.

 1. It is not necessary to go further than the statement of the case in the brief filed on behalf of Holliston Mills to ascertain that there was before the jury some material evidence that adequate provision had not been effectively made to prevent or carry off injurious fumes and gases, particularly chlorine, generated in connection with the manufacture of the cloth which the Mills produced; and of the further fact that this employee suffered injuries to his throat and lungs from breathing these gases or fumes. It will be borne in mind that this Court is not concerned with the weight or preponderance of the evidence, but examines the record only to ascertain whether or not there is any substantial or material evidence upon which the finding of the jury, concurred in by the trial Judge, could be sustained. A number of witnesses are introduced who show that while these fumes and gases did not originate in the room in which this plaintiff below worked, his desk, where he was engaged in clerical work, was stationed within twenty feet of a sliding door which opened into an adjoining room

in which machines were operated which generated these injurious fumes and that they were commonly drawn through this opening and blown upon the plaintiff. There can be no question that there is material evidence to sustain these facts, and we think the trial Judge was correct in holding that it was for the jury to determine whether or not all reasonable steps and precautions had been taken, and all practicable safeguards maintained by the defendant Mills in compliance with the requirements of the statutes. This was distinctly a question of fact.

The trial Judge, upon motion at the close of plaintiff's proof, took from the jury the consideration of the first count, which was a common law count, charging want of due care in the particulars hereinbefore mentioned, and submitted the case to the jury on the second count, which, as before stated, charged violation of the statutory requirements touching these matters. Now counsel insist that the provisions of the statutes requiring the maintenance of reasonable safeguards, etc., amount to no more than the common law requirements as to affording a safe place of work; and counsel argue that, since the trial Judge ruled out the common law count, he should have gone further and ruled out the statutory count. Counsel apparently assume that the Court took a distinction because the second count charged the violation of a statute, as to which the defense of assumption of risk would not apply. Counsel argue that this is not the character of penal statute to which this distinction has application.

We find nothing on the face of the record, in connection with the action taken by the trial Judge, to indicate just why he took a distinction between the two counts, but assuming that it was upon the ground stated by counsel, we are inclined to the view that the distinction

indicated might properly be taken. It appears to be a recognized general rule that the defense of assumption of risk is not permissible where a statute such as this has been violated. Our leading case on this point is *American Zinc Co.* v. *Graham*, 132 Tenn., 586, 589, 179 S. W., 138, wherein NEIL, C. J., reviews numerous cases and so holds. In that case the statute involved required precautionary equipment to be employed in mines. The principle applies here. Also, see the case of *Tennessee Eastman Corp.* v. *Newman*, 22 Tenn. App., 270, 121 S. W. (2d), 130, 136, *certiorari* denied by this Court. It will be borne in mind that this statute was passed in exercise of the police power of the State and it was the same statute that was under consideration in the *Newman Case, supra,* wherein it was directly held that the plaintiff's acquaintance with the conditions of work could not be relied on to support the defense of assumption of risk. The general rule was therein reaffirmed, that, "when the statute is violated by the master the servant does not assume the risk regardless of his knowledge." Moreover, we think that the defendant does not make out a case on the facts which would defeat recovery on this ground. There is abundant evidence that the plaintiff did not appreciate the danger, although he soon became aware of great inconvenience.

Also, under this first assignment counsel argue the plea of the Statute of Limitations of one year. Code, section 8572. As before stated, the declaration alleged the bringing of a former suit and its dismissal by non-suit and the bringing of the present suit within twelve months thereafter. The plea filed by the defendant raising this issue set up simply that "plaintiff's alleged cause of action, if any, accrued more than one year before the institution of this suit, and more than one year before

the institution of his original suit, and defendant here pleads and relies upon the one year statute of limitations as a complete bar,'' etc. We agree with counsel for plaintiff below that this question is directly ruled by the holding of this Court in *Railroad* v. *Harris*, 101 Tenn., 527, 47 S. W., 1096, in which a similar plea was held to be insufficient; that the filing of this simple plea did not put upon the plaintiff the burden of making proof to sustain the averments of the declaration in this regard. This assignment must be overruled.

2. As we understand the argument, the substance of the contention that the statute is unconstitutional is (1) that it is so vague and indefinite in its terms that it does not give notice of just what would constitute a violation thereof; and (2) that it delegates authority which belongs alone to the Legislature, the officials named being empowered to determine what is and what is not required by, or a violation of, the law. The pertinent provisions, being those set out in the declaration, are as follows:

''5339. Ventilation required where five or more persons are employed.—Every factory, workshop, association, or other establishment in which five or more persons are employed shall be so ventilated while work is carried on therein that the air shall not become so exhausted as to become injurious to the health of the persons employed therein, and as to render harmless, as far as practicable, all gases, vapors, dust, or other impurities generated in the course of the manufacturing process or handicraft carried on therein.''

''5340. What to be used to protect employees against dust, filaments, or injurious gases.—Every factory, workshop, association, or other establishment where a work or process is carried on by which dust, filaments, or injurious gases are produced or generated, that are

liable to be inhaled by persons employed therein, the person by whose authority the said work or process is carried on shall cause to be provided and used, in said workshop, factory, association, or establishment, exhaust fans, conveyors, receptacles, or blowers with pipes and hoods extending therefrom to each machine, contrivance or apparatus by which dust, filaments, or injurious gases are produced or generated; or provide other mechanical means to be maintained for the purpose of carrying off or receiving and collecting such dust, filament, devitalized air, or other impurities as may be detrimental to the health of those in or about, or in connection with, such place as herein mentioned. Provided, that if natural ventilation sufficient to exclude the harmful elements above enumerated be provided, the requirements of this section shall have been complied with . . . as herein mentioned. Said fans, blowers, pipes and hoods shall be properly fitted and adjusted and of power and dimensions sufficient to effectually prevent the dust, filaments, or injurious gases produced or generated by said machines, contrivances, or apparatus from escaping into the atmosphere of the room or rooms of said factory, workshop, or other establishment, where persons are employed.''

In the opinion of this Court in *Mayor, etc., of Jonesboro* v. *Kincheloe*, 148 Tenn., 688, 257 S. W., 418, 419, wherein the constitutionality of an ordinance was construed and upheld, challenged upon this charge of uncertainty and indefiniteness, illustrative cases were reviewed dealing with ordinances and statutes. The ordinance in that case made unlawful the keeping of calves on premises within the corporate limits, ''in such way or manner as that they will disturb the residents thereof [of the town] by their noises.'' It was recognized that a statute or ordi-

nance must be certain in its definition of the offense and certain in the penalty inflicted by it; that in so far as possible such laws should be "certain in their application and operation, and their execution not left to the caprice of those whose duty it is to enforce them." *Jones* v. *Nashville*, 109 Tenn., 550, 558, 72 S. W., 985, 986. In the *Kincheloe Case, supra*, it was said: "The necessity for definiteness is founded upon the principle that one may not be lawfully punished for a violation of a statute or ordinance which does not by its terms give notice of the nature of the offense. It must be 'certain and definite, so that the average man may with due care, after reading the same, understand whether he will incur a penalty for his actions or not. Otherwise it is void for uncertainty.' 19 R. C. L., 810." However, the Court declared that there is no hard and fast rule determining what does and what does not constitute indefiniteness, but that wide latitude must be left to the lawmakers in the enactment of laws for the protection of health or the preservation of peace. As was said in that opinion, it is a matter of impossibility always to define the offense in such precise terms as to relieve the law wholly from any charge of indefiniteness and deprive the enforcing officers of all discretionary latitude. Many illustrations are given, wherein a reasonable degree of latitude is allowed to the enforcing officers, among others, enactments dealing with disorderly conduct, loitering, disturbing public worship, etc. These enactments never undertake to define exactly what constitutes a violation. The same principle is involved in statutes regulating speed of automobiles on highways, providing against reckless driving and excessively high speed, which have been attacked on this ground of alleged indefiniteness and uncertainty, but have been in numerous cases upheld. A leading

early case quoted from in this opinion is *State* v. *Schaeffer*, 96 Ohio St., 215, 117 N. E., 220, L. R. A., 1918B, 945, Ann. Cas., 1918E, 1137. The Court holds that what is known as the rule of reason applies, what is reasonable and what is unreasonable being well nigh incapable of precise and specific definition, but under our criminal procedure, as well as civil, being left to the determination of the Courts. "Due care" and "reasonable doubt" are illustrations. Recognition was given by the United States Supreme Court in the *Standard Oil Co.* v. *United States*, 221 U. S., 1, 31 S. Ct., 502, 55 L. Ed., 619, 34 L. R. A. (N. S.), 834, Ann. Cas., 1912D, 734, and *United States* v. *American Tobacco Co.*, 221 U. S., 106, 107, 31 S. Ct., 632, 55 L. Ed., 663, cases of the descriptive term, "Unreasonable restraint of trade," as having sufficient definiteness to support prosecutions for violation of the law.

It was held in the *Kincheloe Case* that any average man would readily know when he was keeping animals in such manner as that they would disturb the peace of the neighborhood, just as in the instant case a manufacturer should have no difficulty in knowing whether or not he was so equipping and operating his plant as to give out poisonous vapors and fumes without affording adequate ventilation and relief therefrom.

This statute was construed and its constitutionality sustained by this Court in *Athens Hosiery Mills* v. *Thomason*, 144 Tenn., 159, 231 S. W., 904, 907, opinion by Mr. Justice McKinney, and it was declared in that opinion that it was "a police regulation, enacted for the preservation of the life and health of those working in the establishments enumerated therein." While it is true that the specific questions now made were not made in that case, the Act as a whole was carefully reviewed and its aims and purposes commented on as beneficial to

both employers and employees. It is significant that the objections now raised to the Act did not then occur to either counsel or the Court, but are now offered for the first time after twenty years of application and State-wide administration. We are of opinion that a reading of these two Code Sections herein challenged for indefiniteness, 5339 and 5340, would enable any employer desiring in good faith to comply therewith to do so without serious difficulty. He should be able to ascertain when injurious fumes, gases, etc., are being created and it should be possible for him to so ventilate as to render these fumes, etc., relatively harmless. We see no particular difficulty in complying with the requirement of the statute with respect to the installation, whenever necessary, of exhausts, outlets, fans, etc. Certainly, with the aid of skilled and trained inspectors who are provided for by the statute no employer could fail to be sufficiently informed, and while it is made the duty of these inspectors, in the exercise of their discretion, to enforce the act, no principle of due process of law is violated, because the punishment for alleged violations of the statute is a matter for the courts and juries, to whom whoever is accused of violation may submit his defense of good faith effort to comply with the law.

■■ Nor do we find merit in the attack made upon the ground of alleged unlawful delegation of powers. In considering this question the distinction must be kept in mind between the delegation of legislative power which the Legislature may not delegate, and power which is not legislative in character, which it may delegate. Before this Court will declare a delegation of power unconstitutional, it must clearly appear that the power in question is purely legislative. See, for a full discussion of this question, the opinion of this Court in the recent

case of *State ex rel.* v. *Knox County*, 165 Tenn., 319, beginning on page 330, 54 S. W. (2d), 973, 976. In that case many decisions are reviewed and the clear right of the Legislature is shown to be generally recognized to confer authority and discretion upon designated officials in the execution of the laws enacted. We quote as follows from that opinion:

"A leading case dealing with this question of the delegation of power by the Legislature is *Field* v. *Clark*, 143 U. S., 649-700, 12 S. Ct., 495, 36 L. Ed., 294. Therein Mr. Justice HARLAN approved and quotes the following pertinent statements of the rule: ' "The true distinction," as Judge RANNEY, speaking for the supreme court of Ohio, has well said, "is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." *Cincinnati, W. & Z. R. Co.* v. *Clinton County Com'rs*, 1 Ohio St., [77], 88. In *Moers* v. *Reading*, 21 Pa., [188], 202, the language of the court was: "Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such discretion is the making of the law." ' "

■ ■ The principles thus stated are applicable and determinative here.

3. The question raised under the final assignment is a challenge of the action of the trial Judge in limiting the number of witnesses tendered to testify as to the facts of the case. The trial Judge limited both sides to five witnesses along the same lines of evidence. The record

shows that this is what occurred at the close of the testimony:

"Mr. Bowman: Your Honor, please, we have ten or twelve more witnesses along the same line as these who have just testified. Their testimony is very material, and we would like to call them.

"The Court: They made the statement that they had several witnesses and I said I would limit the number of witnesses on both sides to five.

"Mr. Bowman: We reserve exceptions."

This assignment must be overruled, in application of the well established rule that this Court will not reverse on the ground of alleged error by the trial Judge in excluding testimony when the transcript fails to show what the proposed testimony would have been. It is otherwise impossible for this Court to determine whether or not the plaintiff suffered any prejudice because of the ruling of which complaint is made. Counsel rely on the opinion of this Court in *Conlee* v. *Taylor*, 153 Tenn., 507, 519, 285 S. W., 35, 48 A. L. R., 940. Conceding the soundness of the holding in that case, that the trial Judge should not limit the number of witnesses offered to prove a disputed, main, or determinative fact, counsel fail to note the distinguishing fact that in the *Conlee Case* the trial Judge refused to permit counsel to incorporate the proposed testimony in the record, so that its relevancy and materiality might be reviewed. That holding is not, therefore, at variance with the well established rule that this Court will not reverse because of the rejection of testimony, unless the offered testimony is preserved and brought here for consideration. We have numerous cases so holding, among them, *Stacker* v. *Louisville & N. R. Co.*, 106 Tenn., 450, 61 S. W., 766; *Weeks* v. *McNulty*, 101 Tenn., 495, 48 S. W., 809, 43 L. R. A., 185, 70 Am. St.

Rep., 693; *Shugart* v. *Shugart*, 111 Tenn., 179, 76 S. W., 821, 102 Am. St. Rep., 777; *Insurance Co.* v. *Scales*, 101 Tenn., 628, 49 S. W., 743.

In the instant case, no effort was made to bring this about, the "approved practice," as held in *Truslow* v. *State*, 95 Tenn., 189, 199, 31 S. W., 987, being to have the witnesses testify for the record in the absence of the jury.

Upon the whole case we find no reversible error and the judgment must be affirmed.

### On Petition to Rehear.

By petition to rehear it is argued that this court overlooked or failed to apply the exception to the general rule that testimony rejected on the trial must be preserved in the record in order that the court on appeal may determine whether or not reversible error has been committed in its rejection. This exception applies where witness being offered to prove a certain fact or facts is refused permission to testify, either because the witness is himself held to be incompetent to give testimony, as for instance when infamous, or because the matter proposed to be established by his testimony is beyond the scope of the pleadings, or otherwise irrelevant and immaterial; for example, if the court was of opinion that even if established it would have no effect upon the result of the case. This was the situation before the court in *Railroad* v. *Hunton*, 114 Tenn., 609, 88 S. W., 182, where this exception was applied. There the trial court refused in this condemnation case to permit witnesses to testify as to the prices at which other neighboring lots had been sold, the trial court apparently taking the view that the question of value could not thus be legally determined.

Counsel also rely on the holding in *Ferguson* v. *State*, 166 Tenn., 308, 61 S. W. (2d), 467, 468, wherein the exception to the general rule requiring rejected testimony to be put into the record was recognized and approved. In that case the sufficiency of a motion for a new trial was involved. This court held that the motion was good on its face and that the trial court erred in refusing to hear testimony offered in support of the motion. In response to the effort to invoke the rule that the testimony was not preserved, this court first found that the motion contained on its face the substance of the testimony which would be given by the witness tendered to the court ''to show the truth of the above statement.'' The court declined to hear the witness, so that there was nothing more the counsel could do in observance of the rule requiring the proposed testimony to be preserved in the record. But, as already indicated, this court found that this rule was sufficiently complied with in that the substance of the proposed testimony appeared on the face of the motion. In the second place, the opinion called attention to the exception applied in the *Hunton Case*, *supra*, and thus re-stated this exception:

''An exception to this general rule is well recognized, appearing to have application to the case now before us, when on the trial the court excludes an entire line or character of testimony, declining to permit to be introduced, or to consider, any testimony directed toward a given issue, because not within the pleadings, or otherwise generally inadmissible. In such a situation, preservation and presentation to the appellate court of the details of the evidence offered is not required for obvious reasons. Assuming that the motion in question stated a legal ground of complaint and for relief, which we think must be granted, then the action of the trial

judge in striking it out and refusing to consider it made it unnecessary, under the above exception, to incorporate and preserve the proposed testimony. With the grounds —the foundation—stricken, nothing was left on which to base evidence. Relief was denied defendant, not because his testimony would not sustain his charge, but because, by analogy to a demurrable pleading, his charge was insufficient."

In the instant case no witness and no testimony was excluded as incompetent, or because the proof proposed was beyond the pleadings "or otherwise generally inadmissible." As remarked in our original opinion, the instant case is unlike the Conlee Case, *Conlee* v. *Taylor*, 153 Tenn., 507, 285 S. W., 35, 48 A. L. R., 940, in that there counsel asked to be allowed to put into the record the testimony of the witnesses which he offered, so that this court might on appeal see just what this testimony would have been, in compliance with the general rule, and this was refused by the trial judge. The opinion in the *Conlee Case* emphasizes this point and holds that the rule would not, of course, be enforced under such conditions.

Nothing of this kind was done or attempted in the instant case. Presumably counsel rely on the general statement addressed to the court at the conclusion of all of defendant's testimony, without calling the name of any witness, that "we have ten or twelve more witnesses along the same line as this, who have just testified," etc. Not only was no witness called or named, but the number was left indefinite. And "along the same line," etc., is entirely too general and vague to present a showing to the trial court or to this court of what the witnesses would swear. It may be observed that the witnesses who had testified for the defendant had covered a wide range,

including (1) the health of plaintiff before and after his employment and the extent of his alleged impairment; (2) the location of plaintiff's place of work in defendant's plant; (3) the health and physical condition and effects thereon of the fumes, of various other employees who gave testimony; (4) the construction of the plant and its equipment; (5) the existence and extent and effect of gas fumes; (6) the use of gas in the World War, as evidence of its ill effects; (7) testimony of doctors as medical experts as to the effects of gas fumes generally and on the plaintiff, a large number having been introduced; (8) the testimony of textile chemists, one of two of whom were objected to as not qualified as experts, etc.; and (9) factory inspectors that testified as to their different examinations and findings.

The trial court could not have told, and this court can get no substantial information, from the general statement made by counsel as to what particular testimony defendant was deprived of by this alleged erroneous ruling of the trial judge, so as to be able to see and say whether or not defendant suffered prejudice—which after all is the ultimate test.

It thus appears that the facts of the instant case do not bring it within the rule announced in the *Conlee Case* and do not bring it within the exception to the general rule announced in the *Hunton Case* and recognized in the *Ferguson Case*.

There are other reasons that might have been assigned for declining to sustain the assignment of error in question, for example, the objection or exception came too late. The court had announced this ruling during the introduction of plaintiff's proof, stating that he was going to limit counsel on both sides as to the number of witnesses on one set of facts and indicating five as the

number. No objection or exception was taken at that time by counsel on either side, and the court did enforce this ruling as to the plaintiff. Now it was not, as heretofore shown, until the close of all the testimony that counsel for the defendant made his objection in very informal manner to this limitation ruling. This general rule is laid down in 26 R. C. L., at page 1034:

"If a party desires to except to a limitation of the number of witnesses, he should do so when the limitation is announced, and not after he has examined the limited number of witnesses."

Supporting cases are cited in the notes. And this rule of practice is obviously well based. Counsel should not be permitted as here to sit by and hear the court announce a ruling applicable to both sides and see it enforced as to the plaintiff and then at the conclusion of all the testimony interpose an exception.

For this and other reasons that might be noted, the petition to rehear must be dismissed.