**Arilla TRAYLOR, Administratrix of the Estate of Veronica Owens, Deceased et al., Plaintiff-Appellant,**

v.

**Evell COBURN and R. W. Harmon and Sons, Inc., Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section.

Feb. 19, 1980.

Certiorari Denied by Supreme Court April 21, 1980.

Walter Buford, Memphis, for plaintiff-appellant.

Robert L. Green, Neely, Green & Fargarson, Memphis, for defendants-appellees.

EWELL, Judge.

This is a wrongful death lawsuit which arose out of an accident resulting in the death of Veronica Owens, age six, on February 20, 1976. Veronica, daughter of plaintiff, Arilla Traylor, was a first grade student at Corning Elementary School located in the Frayser area of Memphis. She was returning on foot to her home at 1076 Lewis after having been transported to a point on the north side of Chelsea Avenue east of the intersection of Chelsea and Breedlove by school bus owned by the defendant, R. W. Harmon and Sons, Inc., and operated by the defendant, Evell Coburn. While crossing Chelsea Avenue she was struck by an automobile and died shortly thereafter.

The case was tried to a jury, but at the conclusion of all the proof the Trial Judge granted defendants' motion for a directed verdict. Plaintiff appeals insisting that the Trial Court erred because under the proof there was a jury question as to common law negligence of and statutory violation by the defendant school bus driver.

When Veronica was enrolled at Corning Elementary School in September of 1975 plaintiff was told that her daughter would be bused to and from school and that the school bus stop nearest her home was on the north side of Chelsea Avenue east of Breedlove. Plaintiff's home was located south of Chelsea, and she was advised that there was no other school bus stop that would preclude Veronica's having to cross Chelsea both in the morning and in the afternoon.

The plaintiff had a son, David, age twelve, who attended Guthrie Elementary School on Chelsea Avenue within walking distance of their home. Prompted by concern over Veronica's crossing of Chelsea Avenue, plaintiff made arrangements whereby each morning her son, David, on his way to Guthrie Elementary School would walk Veronica from home to the intersection of Chelsea and Breedlove where they would cross Chelsea and proceed eastwardly to the school bus stop. David alone would then proceed eastwardly three of four blocks to Guthrie Elementary

School. In the afternoon David was dismissed from school earlier than Veronica, and he would meet her at the school bus stop and would walk with her south across Chelsea Avenue to their home. On some occasions when David was not available plaintiff would meet Veronica to assist her in crossing Chelsea.

The proof is clear and uncontradicted that Veronica had been instructed to wait at the school bus stop until either her brother or her mother came to escort her across Chelsea Avenue and that until the date of the fatal accident she had followed those instructions.

The defendant, Evell Coburn, had been driving the Corning Elementary School route since September, 1975. She testified that in order to fulfill her responsibilities to stop traffic while children crossed the street after leaving the bus she had talked with the children to determine whether or not any of them had to cross the street at each school bus stop. She was never advised that any of the four to six children leaving the bus at the Chelsea-Breedlove stop would cross Chelsea Avenue; and she had observed over a period of approximately five months that all of the children leaving the bus there would walk in the direction of a vacant field located on the north side of Chelsea. After making this stop Ms. Coburn would proceed westwardly to Breedlove where she turned north.

On the date of the accident David came home ill, and the plaintiff attempted to get him settled before going to the school bus stop to meet Veronica. Upon leaving the house she was met by a man who told her that Veronica had been hit by a car on Chelsea Avenue. For some reason Veronica disregarded the instructions to wait until either her mother or her brother arrived. After the bus had left the area she attempted to cross Chelsea with an unidentified little boy at a point approximately 154 feet east of the Breedlove intersection. When the two children got to the middle of the street the little boy ran safely back to the north side of the street, and Veronica continued south until she was struck by an

automobile at a point approximately five feet north of the south curb.

The foregoing facts are established by the uncontradicted evidence in the case. The only question for determination by this Court is whether or not under the evidence the case should have gone to the jury.

■ While it is true that negligence, contributory negligence and proximate cause are ordinarily issues to be decided by the jury, they can be withdrawn from the jury and decided by the court in those cases where the facts are established by evidence free from conflict and the inference from the facts is so certain that all reasonable men, in the exercise of a free and impartial judgment, must agree upon it. *Bailey v. Alloway Bros. Co.*, 29 Tenn.App. 1, 192 S.W.2d 849 (1945); *Berry v. Whitworth*, 576 S.W.2d 351 (Tenn.App.1978).

There are a number of Tennessee cases dealing with the standard of care owned by a school bus driver to a child being transported to and from school. It is clear that the defendants in this cause had a duty to exercise reasonable and ordinary care under the circumstances. In the case of *Hawkins County v. Davis*, 216 Tenn. 262, 391 S.W.2d 658, 660 (1965) Justice Holmes speaking for the Supreme Court elaborated on this duty as follows:

> Reasonable and ordinary care under the circumstances, when one of the circumstances is that the care of a child of tender years is entrusted to the school bus driver, requires that the driver exercise special care proportionate to the age of the child and its ability, or lack of ability, to care for itself.

In a factual situation similar to the one now before us Justice Chambliss speaking for the Supreme Court in the case of *Cartwright v. Graves*, 182 Tenn. 114, 184 S.W.2d 373, 378 (1944) stated:

> [That] the zone or area of legal responsibility for care of immature school children extends beyond the mere landing of the child from the bus in a place safe in itself, and *includes the known pathway which the child must immediately pursue.* (emphasis added)

Plaintiff insists that under the facts of this case there is a jury question as to whether or not the school bus driver exercised reasonable and ordinary care under the circumstances; and she further insists that the driver violated section 59–851(a)(4) of *Tennessee Code Annotated* and section 23–140.1(e) of the *Memphis Municipal Code*, which in relevant portions are identical and provide as follows:

> Except as otherwise provided by the preceding paragraphs, the school bus driver is required to stop such school bus on the right-hand side of such road or highway, and said driver shall cause the bus to remain stationary and the visual stop signs on the bus actuated until all school children who should be discharged from the bus have been so discharged and *until all children whose destination causes them to cross the road or highway at that place have negotiated such crossing.* (emphasis added)

It is uncontroverted that Veronica had been instructed that upon leaving the bus she was to remain on the north side of Chelsea Avenue until met there by either her mother or her brother. This arrangement had functioned satisfactorily for more than five months during which time the school bus driver did not know that Veronica's home was south of Chelsea or that after the bus had departed she daily crossed Chelsea in the company of either her mother or her brother. There is no proof of any occasion during this five month period on which Veronica, after leaving the bus, immediately pursued a pathway south across Chelsea Avenue; and there is no proof that the bus driver had any reason to anticipate that Veronica would cross Chelsea on the date of the accident.

■ There is no question but that the bus driver did not comply with the above statutory requirement, but under the facts of this case we find and hold that Veronica was not such a person as was within the protection of this statute and intended to be benefited thereby. The plaintiff by her own election had made other arrangements

calculated to provide Veronica safe passage across Chelsea Avenue. Under this arrangement it was not necessary or practical for the school bus driver to cause the bus to remain stationary with the visable stop signs on the bus actuated until Veronica had crossed. After so operating for five months plaintiff is without standing to insist that on the date of the accident the failure of the bus driver to comply with this section constituted negligence as to Veronica.

■ It is a well settled proposition of law that failure to perform a statutory duty is negligence *per se*, and if injury is the proximate result or consequence of this negligent act, there is liability. However, the person suing must be such a person as is within the protection of the law and intended to be benefited thereby. *Berry, supra.* In the case of *Carter v. Redmond*, 142 Tenn. 258, 218 S.W. 217 (1920) the Supreme Court of this State, quoting from an earlier opinion, held as follows:

> In order to found an action on the violation of a statute, or ordinance, . . . the person suing must be such a person as is within the protection of the law and intended to be benefited thereby. . . . We think that one not a beneficiary of a statute may neither base an action nor a defense on a violation thereof. Unless an individual be within the province of a statute, its violation is no breach of duty to him. *Chattanooga Ry. & Lt. Co. v. Bettis*, 139 Tenn. 332, 202 S.W. 70.

The Trial Judge in his remarks to the jury in directing a verdict for the defendants succinctly summarized the factual situation as it relates to the applicable statutory and common law as follows:

> Ladies and gentlemen of the jury, a motion for a directed verdict has been made in this case on behalf of the defendants on the ground that as a matter of law there is no issue of fact to submit to the jury.
>
> The jury is the judge of the facts in the case, and the Court is the judge of the law, and one aspect of the law that the Court must determine is whether or not as a matter of law there is an issue of fact to submit to the jury.
>
> It seems to the Court in this case that over a period of months this child, Veronica Owens, had been deposited on the north side of Chelsea and Breedlove, and each day the older brother or the mother took the child and carried her across the street.
>
> There is a state statute and City ordinance that requires the operator of a school bus to keep the arm out indicating stop until all traffic is stopped so that the child can cross the street safely, but in this case in the Court's opinion there is no element of proof to show that the bus driver had any right to expect the child to cross the street at this time because, as I have heretofore said, the child always got off on the north side and waited for the mother.
>
> Now there is no contributory negligence on the part of the deceased child because she was of such an age that she could not be guilty of contributory negligence, but the Court fails to find where there was any negligence on the part of the bus driver acting on behalf of herself and the bus company.
>
> Some child unknown started across the street with Veronica and became confused in the traffic and left her there.
>
> Now the bus driver had no reason to expect that anybody was going to take that child by the hand and cross the street. It hadn't been done for months and, apparently, either David, the older brother, or the mother were late in getting there because David went home sick from school. He had to be attended to, and the mother came there, but how would the bus driver know that?
>
> Are we to assume that David and the mother were there right on the dot and waiting for the bus each day, and did she have any reason to expect that the child was not going to stay at the normal place where the mother said the plan had been worked for the child to stay until they got there?

So the Court sees no factual issue of negligence to present to the jury in this case, and the Court will sustain the motion for directed verdict made by the defendants in this case.

We agree with the Trial Judge. There is no evidence in the record from which it could be found that the defendants were guilty of negligence which was a proximate cause of this unfortunate accident. It results, therefore, that we find no error in the granting of defendants' motion. The judgment of the Circuit Court is affirmed and the suit dismissed. The costs on appeal are assessed against the plaintiff-appellant.

MATHERNE and SUMMERS, JJ., concur.