**Carl WREN and Frances Marie Wren, Plaintiffs-Appellants, Cross-Appellees,**

v.

**SULLIVAN ELECTRIC, INC., Defendant-Appellee, Cross-Appellant.**

Nos. 84–6118, 85–5097.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 24, 1986.

Decided July 30, 1986.

Rehearing and Rehearing En Banc Denied Sept. 17, 1986.

Steve North (argued), Jack Waddey, Nashville, Tenn., for plaintiffs-appellants, cross-appellees.

Patrick A. Ruth (argued), Gracey, Maddin, Cowan and Bird, Nashville, Tenn., for defendant-appellee, cross-appellant.

Before LIVELY, Chief Judge, MERRITT and NELSON, Circuit Judges.

MERRITT, Circuit Judge.

This is a Tennessee diversity action by a construction worker for personal injury against a subcontractor not his employer. The plaintiff, Carl Wren, was the employee of a plaster subcontractor at a construction site for which defendant Sullivan Electric was the electrical subcontractor. Allegedly as a result of substandard lighting, Wren fell into an open elevator shaft and was seriously injured. The primary questions presented are whether plaintiff belonged to the class protected by the applicable state and federal safety statutes and regulations; whether under the circumstances the violation of those regulations constituted negligence *per se* under Tennessee law; and whether the defenses of assumption of the risk and contributory negligence are available to the electrical subcontractor. We conclude that Wren fell within the class protected by the worker safety regulations and therefore within Tennessee's negligence *per se* doctrine. The doctrines of contributory negligence and assumption of the risk do not apply under such circumstances in Tennessee, and the case must be reversed and remanded for a new trial.

## I.

Carl Wren was a supervisor for Tarpley & Tarpley Plastering Co. when he sustained a broken leg in December of 1975. He was unable to work for approximately one month, then returned to work on light duty, making deliveries.

On January 16, 1976, he was injured at the Hubbard Hospital construction site in Nashville. While on the site making a delivery, he went down to the basement to instruct some workers. Because of construction changes, the route that he had taken on such trips in the past was blocked, so that he instead used another corridor, which was unlit. About half-way down the corridor he fell into an unlit elevator shaft, sustaining a broken back which left him totally disabled.

Plaintiff filed suit against Sullivan Electric, claiming that the temporary lighting that it had installed in its capacity as electrical subcontractor was inadequate under the applicable state regulations, which incorporated the federal occupational health and safety standards.[1] The illumination levels in the regulations require one 150-watt bulb per two hundred square feet, while the contract between Sullivan and the general contractor provided for only one such bulb per two thousand square feet. Wren maintained that under Tennessee law the violation of a statute or regulation constitutes negligence *per se* as to those whom the statute or regulation was meant to protect.

The trial court granted summary judgment in favor of Wren as to that issue, holding that Sullivan Electric had a duty to comply with the safety standards despite the subcontract, that failure to so comply constituted negligence *per se* under Tennessee law, and that Sullivan Electric had breached its duty of compliance and was thus negligent *per se*. The District Court then allowed the case to go to the jury on the issues of contributory negligence and assumption of risk. The jury returned a verdict for the defendant, from which plain-

1. Tenn.Admin.Comp. § 0800–1–6.56, incorporating 29 C.F.R. § 1926.56 as authorized by Tennessee OSH Act of 1972, Tenn.Code Ann. §§ 50–3–101 et seq.

tiff appeals. The defendant, meanwhile, cross-appeals the District Court's grant of summary judgment for the plaintiff on the negligence *per se* issue.

## II.

The plaintiff's argument can be summarized as follows: the trial court acted correctly in granting summary judgment on the issue of negligence *per se*, but erred in allowing the issues of contributory negligence and assumption of risk to reach the jury. The defendants respond that the trial court's actions were correct as to matters presented at trial, but that the trial court erred in granting summary judgment on the negligence *per se* issue.

■ This court has previously held, and both parties agree, that under Tennessee law the violation of a statute or regulation is negligence *per se* as to members of the class that the statute or regulation is intended to protect. *Teal v. E.I. DuPont de Nemours & Co.*, 728 F.2d 799 (6th Cir. 1984), *following Alex v. Armstrong*, 215 Tenn. 276, 385 S.W.2d 110 (1964); *Taylor v. Coburn*, 597 S.W.2d 319, 322 (Tenn.App. 1980); *Berry v. Whitworth*, 576 S.W.2d 351, 353 (Tenn.App.1978). The questions here involve the application of that rule, namely: (1) was it error for the District Court to find that Sullivan had a duty to comply with the statute given the language of the contract; (2) was Wren a member of the class protected by the statute and regulation in question; and (3) was it error for the District court to allow the jury to decide issues of contributory negligence, assumption of risk, lack of notice and lack of control?

■ Sullivan argues that its work was not in violation of the regulations because it had not contracted to provide complete temporary lighting of the sort envisioned by the regulations, but only to provide one 150-watt light bulb per two thousand square feet. Thus, although the general contractor remained obligated to provide lighting up to the required level, Sullivan's obligation was merely to furnish the lighting provided for by the contract. By con-

tracting to provide part of the lighting required by the safety regulations, Sullivan argues, it did not assume the responsibility of providing lighting up to the required level; that responsibility was solely that of the general contractor.

The problem with this argument is that the contract between Sullivan and the general contractor did not simply state the levels of lighting that Sullivan was to provide; it also provided that all work done was to be in compliance with all applicable construction and safety regulations:

> This subcontractor shall comply with all State and Federal Safety Laws and will be responsible for any fines levied due to non-compliance of any laws.

Subcontract agreement, § 7.

> 2. Codes and Standards
>
> A. The entire electrical installation shall be made in strict accordance with the requirements of any city, county, state or federal codes having jurisdiction, including the latest edition of the National Electrical Code and the Department of Labor's Occupational Safety and Health Standards and any other amendments pertaining thereto.
>
> B. Should any work shown on the drawings or herein specified be construed as being contrary to or not conforming to the aforementioned codes, such alleged confliction [sic] shall be brought to the attention of the Architect in sufficient time prior to bid date for review so that such point in question may be approved and/or corrected by the Architect.

Specifications, § 16A.

Thus, under the language of the contract, Sullivan was required to perform work up to code, and to notify the Architect wherever it appeared that fulfilling specifications in the contract would result in non-compliance with local, state or federal regulations. Sullivan has not argued that it gave such notice, nor that it had reason to believe that lighting up to the required levels was to be provided by someone else. Furthermore, the rules of con-

struction provided in the Federal OSHA regulations, 29 C.F.R. § 1926.16 (incorporated under Tennessee law as Tenn.Admin. Comp. § 0800–1–6.16) state that "[t]o the extent that a subcontractor of any tier agrees to perform any part of the contract, he also assumes responsibility for complying with the standards … with respect to that part." It is thus not enough for Sullivan to assert that, because it fulfilled the requirements of a contract that did not meet the regulations' requirements, it had no responsibility to comply with the regulations. Such an approach would conflict with the plain language of the contract, which requires compliance with the regulations, and would also render the regulations a nullity as applied to subcontractors who comply with sub-par specifications, a result plainly inconsistent with the letter and intent of the state and federal safety regulations.

■ Up to this point the case is straightforward, and there is no problem with the District Court's rejection of Sullivan's contract argument. The problem is that although Wren was authorized by his employer to carry materials and information to fellow plasterers at the hospital site, his employer states that he told him not to go into the building. The jury apparently accepted the employer's testimony as true and found for the defendant on grounds of assumption of the risk or contributory negligence or both.

In *Teal v. DuPont, supra,* this court found that the OSHA statute incorporated in Tennessee law imposes on a contractor both the general obligation to protect its own employees authorized to be on the site by providing a safe workplace, and a specific duty to comply with the regulations and thus provide to all workers on the site a workplace free from the specific hazards envisioned in the regulations. 29 U.S.C. § 654(a)(1) states that each employer shall furnish "to his employees" a job and workplace free from recognized hazards, while § 654(a)(2) imposes a duty to comply with the OSHA standards without reference to

any particular class of individuals. *See* 728 F.2d at 804–05.

Thus Wren falls within the classes protected by Tennessee's safety statute and regulations incorporating OSHA standards. Under these circumstances it appears that it was error to permit the defenses of assumption of the risk and contributory negligence to go to the jury. The general rule is that where negligence *per se* is established as the result of the violation of a statute or regulation, the defendant may still raise the defenses of contributory negligence and assumption of the risk, *see, e.g., Lahman v. City of Knoxville,* slip op. (Tenn.App., W.D., #1031, Feb. 12, 1986) [Available on WESTLAW TN–CS database] (available on LEXIS, TENN file); *Union Ry. Co. v. Jinks,* 55 Tenn.App. 491, 402 S.W.2d 495 (1965), unless the statute violated was designed to protect workers from injury. *See American Zinc Co. v. Graham,* 132 Tenn. 586, 179 S.W. 138 (1915) (mine safety statute); *Tennessee Eastman Corp. v. Newman,* 22 Tenn.App. 270, 121 S.W.2d 130 (1938) (Workshop and Factory Inspection Act); *Holliston Mills v. McGuffin,* 177 Tenn. 1, 145 S.W.2d 1 (1940) (same Act; "[W]hen the statute is violated by the master the servant does not assume the risk regardless of his knowledge."); *State v. Clymer,* 27 Tenn.App. 518, 182 S.W. 2d 425 (1943) (mine safety and inspection statute and regulations) (quoting *American Zinc*). In all of these cases, the opinions have stated that the various worker safety provisions involved were remedial in nature and thus placed the duty of compliance on the employer, so that it would be inconsistent with the intent of the legislature to allow the interposition of defenses such as assumption of risk and contributory negligence. As the Tennessee Supreme Court stated in *American Zinc:*

> To hold that he [the worker] assumed the risk would be equivalent to a repeal of the statute, since it would be a continuing invitation to the company to forbear compliance with its provisions. The statute was passed under the police power of the state for the purpose of protecting those who are unable to protect themselves, occupying as they necessar-

ily do a position much inferior in financial security to that of their employers; the physical necessity of themselves and their families making it essential that they should have work in order to secure the means of sustenance. It would defeat this beneficent purpose if it should be admitted as a sound principle that a failure of the employer to obey the statute could be condoned by the employee.... Such acts being passed to define rights and duties for the better regulation of business, and hence indirectly for the better regulation of society, must be sustained. They are not amenable to the doctrine of assumption of the risk for the reasons we have stated, since a contrary decision would result in the courts loosing what the legislature has bound.

132 Tenn. at 589–90, 179 S.W. 138. *Accord*, Restatement of Torts (Second) § 483 comment c ("There are, however, exceptional statutes which are intended to place the entire responsibility for the harm which has occurred upon the defendant. A statute may be found to have that purpose particularly where it is enacted in order to protect a certain class of persons against their own inability to protect themselves.... In such a case the purpose of the statute would be defeated if the contributory negligence of the [plaintiff] were permitted to bar his recovery."); §§ 285–288B. Thus, once negligence *per se* has been established as a result of the violation of a worker safety statute, the only questions left to be resolved are those of proximate cause, injury, and damages.

The statutes and regulations involved here are not distinguishable from those involved in the earlier cases. *See* Tenn. Code Ann. § 50–3–102 (protective purpose of statute). Nor is there anything in the structure of the acts or the language of the regulations to suggest that they should be afforded different treatment than that customarily provided worker safety statutes under Tennessee law. Accordingly, we hold that it was error to place the issues of contributory negligence and assumption of risk before the jury.

██ We also find no merit in Sullivan's defenses of lack of notice and lack of control. As discussed above, in Tennessee a finding of negligence *per se* growing out of a violation of a worker safety statute or regulation is not rebutted by a lack of notice or control, as the duty is not one of ordinary care or reasonable conduct but one of strict compliance with the statute or regulation.[2]

Accordingly, the District Court's grant of partial summary judgment for the plaintiff is affirmed, the jury's finding for the defendant is reversed, and the case is remanded for further proceedings in light of this opinion.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the judgment of the court, but for a reason that differs from the court's and that would permit the defenses of contributory negligence and assumption of the risk to be considered by the jury if the jury believes the testimony of plaintiff Carl Wren's employer that Mr. Wren had been instructed to stay out of the building where his injury occurred.

Mr. Wren had broken his leg in several places a month before the fall for which he is suing here. He was wearing a cast that extended from toe to mid-thigh, and he was

---

**2.** Judge Nelson's concurring opinion suffers from two important defects on this issue with regard to the testimony of Wren's employer that he ordered Wren not to enter the building. The first is that this suit is against a third party subcontractor who allegedly did not provide a workplace free of specific hazards, as discussed above, not against the employer for failing to provide a safe workplace for his own employees. *See Teal, supra.* In light of Tennessee's clearly-articulated policy in favor of strict compliance with worker safety regulations, it would make no sense to excuse the electrical subcontractor's negligence on the fortuitous basis of comments made by Wren's employer. Second, there is no support at all in the Tennessee statutes, regulations, or case law for the distinction that Judge Nelson proposes. Thus, the duty of strict compliance should be read as just that. *Ubi lex non distinguit, nec nos distinguere debemus.*

able to navigate only on crutches. He had prevailed on his employer to let him return to work while the cast was still on his leg, but the employer testified that Mr. Wren had been specifically told that although he could deliver materials to the job site (which he was able to do without getting out of his truck, the unloading being done by laborers on the site), he was not to go into the building. The employer thought there were "too many hazards [for anybody in Carl's shape at that time] in a new job site."

The employer testified that the instructions not to enter the building preceded Mr. Wren's fall into the elevator shaft. Mr. Wren himself, however, testified that this conversation took place after the fall, at a time when he was talking to his employer about returning to work a second time.

We have no way of knowing which version the jury might have considered more credible. The verdict in favor of defendant Sullivan Electric was a general verdict, not tested by special interrogatories. It is possible that the jury accepted Mr. Wren's version of the facts but returned a verdict against him anyway on the theory that he should not have gone where he could not see. It is also possible that the jury believed Mr. Wren had been told to stay out of the building and that he would not have been injured if he had simply done as he was told.

Tennessee law would allow a verdict for the defendant under the latter hypothesis, I think, but not under the former.

The general rule in Tennessee, as the court's opinion indicates, is that contributory negligence or assumption of the risk of injury by the plaintiff will defeat recovery against a negligent defendant whether or not the defendant's negligence arises from a violation of a statute or ordinance and thus is "negligence per se." To this general rule there is an exception, as the court's opinion also indicates: the Tennessee courts have repeatedly held that an employer or safety official whose violation of a worker safety statute results in injury to an employee may not escape liability because of the employee's contributory negligence or assumption of the risk in going on a job site he knows to be hazardous. *American Zinc Co. v. Graham,* 132 Tenn. 586, 179 S.W. 138 (1915); *Tennessee Eastman Corp. v. Newman,* 22 Tenn.App. 270, 121 S.W.2d 130 (1938); *Holliston Mills v. McGriffin,* 177 Tenn. 1, 145 S.W.2d 1 (1940); *State, for the Use of Lay v. Clymer,* 182 S.W.2d 425 (Tenn.App.1943).

The scope of the exception to the general rule must, I think, be considered a function of the reason that led the Tennessee courts to carve out the exception in the first place. In each of the cases cited the injured employee was in a hazardous place because his employment *required* it; in none was he there despite his employer's having *forbidden* it. Thus the presence of the *American Zinc* plaintiff in the employer's hazardous mine shaft was the result of "physical necessity ... making it essential that [he] should have work in order to secure the means of sustenance." 179 S.W. at 139. The *Tennessee Eastman* plaintiff's exposure to the hazards of soda ash dust, similarly, resulted from the fact that "the employee was *required* to perform his duties in the dust storm." 121 S.W.2d at 132. (Emphasis supplied.) The *Holliston Mills* plaintiff was exposed to injurious fumes because the desk at which he did clerical work for his employer was located within 20 feet of the room where the employer was producing the fumes. 145 S.W.2d at 3. And the mine explosion in which the *Clymer* plaintiffs were injured or killed occurred in the particular mine in which they were paid to work. 182 S.W.2d at 428.

As indicated in the passage from *American Zinc* quoted in this court's opinion, the Tennessee courts are not willing to hold that an employee assumes the risk of injury when economic necessity compels him to enter a site that he knows is hazardous, but that also happens to be the place where he earns his daily bread. It scarcely follows from this, however, that an employee cannot be found to have assumed the risk of injury when he enters a hazardous site from which his employer has directed him to stay away. *Cessante ratione, cessat ipsa lex;* if Tennessee's general rule retains any

meaning at all, I fail to see why it should not be applied in such a situation.

There is nothing to the contrary in *Teal v. E.I. DuPont de Nemours and Co.,* 728 F.2d 799 (6th Cir.1984), which, like *Clymer,* was an action against someone other than the plaintiff's own employer. Like the plaintiffs in *Clymer,* Mr. Teal was where he was because his employer wanted him to be there. Teal's employer, as far as the opinion discloses, had never told him to stay out of the "bailer pit" in which he was injured, and it seems fair to assume that the exigencies of his employment required him to be there.

The question presented in the case at bar is whether the Tennessee courts would say that an employee may be found to have assumed the risk of injury on a hazardous job site when, knowing of the danger in doing so, he enters the site against orders. Seeing no reason why Tennessee could not be expected to answer that question in accordance with its general rule, I would permit the trial court to instruct the jury that Mr. Wren may be found to have assumed the risk of injury if the jury believes the testimony of his employer, but not otherwise.