IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 27, 2002 Session

## JAMES MICHAEL RAULSTON v. MONTGOMERY ELEVATOR COMPANY d/b/a MONTGOMERY KONE, INC. , ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-358-99     Dale C. Workman, Judge**

**FILED SEPTEMBER 30, 2002**

**No. E2002-00216-COA-R3-CV**

---

This is a negligence action stemming from injuries allegedly sustained by Plaintiff James Michael Raulston when the elevator in which he was riding allegedly fell approximately five floors and came to an abrupt stop. Mr. Raulston sued Defendant Montgomery KONE, Inc. ("Montgomery KONE"), alleging it was negligent in failing to properly maintain the subject elevator in a safe condition. Montgomery KONE filed a motion for summary judgment, which the Trial Court granted. Mr. Raulston argues on appeal that the Court's grant of summary judgment was improper. We find there are genuine issues of material fact and therefore vacate the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Judy Pinkston McCarthy and Dennis McCarthy, Knoxville, for the Appellant, James Michael Raulston

R. Kim Burnette, Knoxville, for the Appellee, Montgomery KONE, Inc.

### OPINION

Mr. Raulston is an employee of the University of Tennessee Medical Center at Knoxville ("UTMC"). At the time of the accident, he was employed as a transporter and was assigned to operate an elevator, which was referred to as elevator EP-04. Mr. Raulston alleged that on June 3, 1998, he was operating elevator EP-04 and had gone up to the eighth floor to pick up another UTMC employee and a stretcher. Mr. Raulston pushed the button for the lobby floor. According to his affidavit, the following then occurred:

Instead of going to the lobby, however, the elevator stopped on the seventh floor. I pushed the button for lobby again. The elevator, without warning, then dropped from the seventh floor to between the first and second floors. I was standing when the elevator dropped.

Both employees on the elevator allegedly sustained injuries as a result of its fall.

Mr. Raulston filed the instant action against Dover Elevator Company d/b/a Thyssen-Dover Elevator ("Dover"), the alleged manufacturer of the elevator, and Montgomery KONE, which he alleged was under contract with UTMC to maintain the elevator. His action against Dover was subsequently settled and thus Montgomery KONE remains the sole defendant and party to this appeal.

As noted above, Montgomery KONE moved for summary judgment, which was granted by the Trial Court. Mr. Raulston appeals, raising issues which we restate and summarize as follows:

1. Whether there exist genuine issues of material fact which render summary judgment inappropriate.

2. Whether Montgomery KONE was guilty of negligence *per se.*

Our review of the record leads us to the conclusion that there are issues of material fact which preclude summary judgment in this case.

In *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000) the Tennessee Supreme Court stated the following as to the standard of review specifically applicable to summary judgments:

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

It appears from the record that there exists a genuine issue of material fact regarding whether the elevator at issue actually fell. In support of its motion for summary judgment, Montgomery

KONE filed the affidavit of Jeff Robbins, the Service Manager for its Knoxville branch office. Mr. Robbins' affidavit states the following in relevant part:

> KONE has provided maintenance to certain elevator equipment at the University of Tennessee Medical Center since approximately June, 1995. One of the elevators included within our maintenance agreement is an elevator unit designated by UT as EP-04.
>
>             \*             \*             \*
>
> Following a reported incident at UT Medical Center on June 3, 1998, in which elevator EP-04 was alleged to have dropped several floors, and then coming to a sudden stop, certain inspections of this equipment were undertaken.
>
> Immediately following the incident, one of our service mechanics, Don Grubb, arrived at the scene shortly thereafter. The car at that time was stopped between floor "2" and "L." Mechanic Grubb then went to the mechanical room to lower the elevator car to the lobby floor level. Prior to doing so, he verified that neither the governor overspeed switch nor the governor tripping mechanism were engaged, indicating that the elevator had not been in an overspeed or freefall condition. After closing the doors to the elevator car, the car was lowered and the passengers were removed. The unit was returned to service at that time.

Approximately three hours later, the elevator was shut down at UTMC's request and a more thorough inspection took place. Mr. Robbins' affidavit states that "our inspection revealed no indication that any overspeed or free fall condition had occurred."

The record contains a letter from Mr. Robbins to UTMC's Director of Engineering which again noted that "the governor overspeed switch was not tripped, indicating the car did not overspeed." The letter continues as follows:

> I read in one of the accident reports that there was a stretcher on the car. There is another possibility that should be considered. Could the stretcher have inadvertently come in contact with the stop switch in the car operating panel? At this point, considering what we found, this might be the most likely cause of the elevator stopping.

Montgomery KONE's Statement of Undisputed Facts, filed pursuant to Tenn. R. Civ. P. 56.03, states that "[t]he inspection and testing process of the subject equipment revealed that *there had been no overspeed or free fall condition that had occurred.*" (Emphasis added). This is obviously a very different factual scenario than that contained in Mr. Raulston's affidavit. As the Supreme Court has recently stated, if there is "any doubt whether or not a genuine issue exists,"

summary judgment should be denied. *McCarley v. West Quality Food Service*, 960 S.W.2d 585 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993).

Montgomery KONE argues on appeal that Mr. Raulston failed to provide evidence of any causal connection between its actions and the alleged accident. We must respectfully disagree. The evidence presented, taken in the light most favorable to the non-moving party, suggests that there were numerous problems with the maintenance of the elevators at UTMC, including the subject elevator EP-04. Mr. Raulston's affidavit states that

> In March 1997, I was in an elevator, EP-04, located in the East Pavilion at UTMC. I was assigned to run the elevator. With a hospital patient on the elevator, the elevator dropped two and one-half floors. I injured my back and was treated. I returned to work about three days later.
> When I returned to work, I assumed the elevator had been repaired. My supervisor, Marshall Williams, had written at least one memorandum complaining about the performance of the elevator, EP-04.

There is a letter in the record dated March 5, 1998, from Mr. Williams to the Maintenance Supervisor at UTMC, which states:

> Presently there is an issue with the East Pavilion Patient Elevators, mainly EP-04. It seems they constantly fail to properly line up with the floor, causing a ½ to 1-inch variance. This makes it very uncomfortable for a patient to move via a stretcher or bed. Patients receive quite a jolt when crossing this bump. Also, the actual moving of patients is very difficult especially by bed or specialty bed, as they will not roll over the slightest bump. They physically must be lifted over. This opens the potential for Workman's Comp injury for the transporter. I have brought this to the attention of the elevator maintenance person but the problem isn't resolved.

In addition, Mr. Raulston stated the following in his affidavit:

> As the transporter who operated the elevator, EP-04, I have personal knowledge that on an ongoing basis the elevator did not level properly, it had dropped on a prior occasion injuring me, it often stopped on the wrong level, the door occasionally closed on passengers, and the doors from time to time failed to open.

In support of his effort to avoid summary judgment, Mr. Raulston submitted the affidavit of Charles A. Buckman, an expert in the field of vertical transportation and the evaluation of code

compliance and safe operation of elevators. Mr. Buckman's affidavit states as follows in relevant part:

> I make this preliminary affidavit to show the Court that there are genuine issues of material fact concerning the operation, maintenance, inspection, and servicing of the subject elevator (EP-04) by all of the defendants in that overspeeding an elevator and having an elevator perform emergency stops as occurred in this case does not occur in the absence of negligence.
>
>          \*           \*           \*
>
> Representatives of an elevator consulting firm, Lerch Bates North America. . .conducted a general inspection of the elevators at the University of Tennessee Medical Center and reported the results to the Medical Center on June 17, 1996. On November 18, 1996, Lerch Bates submitted a follow-up report to its June 17 audit. (Exhibit C). Lerch Bates noted, "We were disappointed to find that of the original 281 items only 126 actually had been addressed." *Id.* Some of the uncorrected problems involved safety-related issues. On June 18, 1997, in a letter to the Medical Center, Lerch Bates noted that from September 1996 through April of 1997, 281 calls on elevator problems had been reported, 62 of which involved entrapment of people on the elevators. (Exhibit D, letter to Harry Whetsell from Robert Young.) This number of calls did not include "running on arrival" calls--that is, calls made to KONE after a malfunctioning elevator was turned off, only to have the elevator operate normally when KONE arrived and turned the elevator back on. *Id.* Lerch Bates noted,

>> The need for safety sometimes requires the unit be turned off before it can be thoroughly investigated by Montgomery but this can sometimes clear a problem with the elevator when the unit is turned back on. Having a problem clear itself in this fashion is by no means a permanent solution to the problem and possibly more detailed information of the problem may be required by Montgomery for a thorough investigation of the suspect unit. The repetitiveness of the "Running on Arrival" solution on some units gives us concern of whether the calls are being thoroughly investigated and corrected. We recommend Montgomery closely watch for this type of problem and take positive action to reduce the number of occurrences.

*Id.* Lerch Bates concluded that "the callbacks are still extremely excessive and we are concerned over the total number of calls as well as the repetition of the "Running on Arrival" solutions." *Id.*

The typical number of trouble calls to be expected annually is six calls per elevator. The University of Tennessee Medical Center has 35 units, some of which are dumbwaiters. Based on my review of the documents that I examined, I discovered that during the year beginning April 1, 1996, there were 562 trouble calls, 136 of which were entrapments. This means there was an average of 16 calls per unit or 2.6 times the national average. On average, each elevator experienced a trouble call every 23 days, with an entrapment once each quarter. This unconscionable record, which was of such concern to Lerch Bates, could only be achieved through KONE's negligence. It clearly demonstrates the negligent maintenance experienced by the University of Tennessee Medical Center.

The level of poor maintenance and need for repair that Lerch Bates indicated in Exhibits C-D does not meet the industry standard of care and demonstrates gross negligence on the part of KONE, which was responsible for the proper maintenance and repair of the elevators under the maintenance contract provided in Exhibit B.

Based on the foregoing factual information, I conclude, albeit preliminarily, that several defective or dangerous conditions existed in EP-04 that would not be present in the absence of negligence. Descriptive terms such as "falling," "bouncing," "not leveling," and "sticking between floors" made by witnesses as well as the oft-repeated stranding of passengers in stalled elevators are clear indicators of problems with elevators.

Taking the above evidence in the record in the light most favorable to Mr. Raulston, as we must under our summary judgment standard, we find that it provides a basis from which a trier of fact could reasonably conclude that the proximate cause of the accident, and Mr. Raulston's injury, was the negligent maintenance of the elevator at issue. Generally speaking, issues of causation in negligence cases are for the trier of fact to decide. "Such issues can only be decided by the court in cases where inferences from uncontroverted facts are so certain that all reasonable men in the exercise of free and impartial judgment must agree upon them." *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547 (Tenn. 1981).

We next address Mr. Raulston's argument that Montgomery KONE was guilty of negligence *per se*. In support of this argument, he points to the following portion of Mr. Buckman's affidavit:

Under ASME A17.1 Rule 1002.3,[1] the maintenance contractor was required to perform an inspection every five years, including a "safely lower, hold and stop test" with 125 percent of its rated load. . . .The purpose of the test is to prevent accidents to individuals riding on the elevator. I inspected all maintenance records for Elevator EP-04 and the other elevators at the University of Tennessee Medical Center, however, and failed to uncover any evidence to show that the required test was performed during the period in which Dover Elevator Company, the prior contractor, had the maintenance contract, and KONE did not perform the test until after the Plaintiff's accident and more than three years after KONE had entered the maintenance contract with the University of Tennessee Medical Center.

In the case of *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn.Ct App. 1992) the court succinctly set forth the three elements of a negligence *per se* claim:

The doctrine of negligence *per se* is firmly established in our case law. In order to recover on the basis of negligence *per se*, three elements must be established. First, it must be shown that the defendant violated a statute or ordinance which "imposes a duty or prohibits an act for the benefit of a person or the public." *Nevill v. City of Tullahoma*, 756 S.W.2d 226, 232-233 (Tenn.1988). Second, the proof must show that the injured party was within the class of persons whom the legislative body intended to benefit and protect by the enactment of that particular statute or ordinance. *Traylor v. Coburn*, 597 S.W.2d 319, 322 (Tenn.App.1980). In addition to establishing negligence *per se* by showing these two elements, the plaintiff must of course show that such negligence was the proximate cause of the injury. *Brookins v. The Round Table*, 624 S.W.2d 547, 550 (Tenn.1981); *Alex v. Armstrong*, 215 Tenn. 276, 283, 385 S.W.2d 110, 114 (1964).

(Internal citations omitted.) In the present case, Mr. Raulston has not alleged that Montgomery KONE violated any statute or ordinance, nor has he provided in the record a copy of the ASME A17.1 Rule 1002.3 cited by Mr. Buckman's affidavit. The proof presented by Mr. Raulston does not meet the required showing for the first element of a negligence *per se* claim.

Montgomery KONE argues that Mr. Raulston's appeal should be dismissed because of failure to follow the requirements of Tenn. R. App. P. 24(b), with respect to the filing of the transcript of the summary judgment motion hearing. Tenn. R. App. P. 24(b) provides that "unless

---

[1]The cited rule refers to the Elevator Safety Code, as approved by the American Society of Mechanical Engineers.

the entire transcript is to be included, the appellant shall, within 15 days after filing the notice of appeal, file with the clerk of the trial court and serve on the appellee a description of the parts of the transcript the appellant intends to include in the record, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal." Montgomery KONE asserts that it was not notified within 15 days that Mr. Raulston did not intend to include a copy of the summary judgment motion hearing transcript in his designation of the record.

Mr. Raulston argues that the failure to notify Montgomery KONE was an inadvertent omission which in no way prejudiced a defense upon the merits. Upon learning that Mr. Raulston did not intend to file the transcript, Montgomery KONE filed a motion styled "Designation of Additional Portions of Transcript Pursuant to T.R.A.P. 24(b)." Montgomery KONE did not file a motion to dismiss as authorized by Tenn. R. App. P. 26(b). Exercising our discretion, we decline to dismiss this appeal.

For the foregoing reasons the judgment of the Trial Court is vacated and the cause remanded for proceedings not inconsistent with this opinion. Costs of appeal are adjudged against the appellee, Montgomery KONE.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE